**TEXAS WAREHOUSE COMPANY OF DALLAS, INC., Appellant,**

v.

**SPRINGS MILLS, INC., Appellee.**

**No. 5313.**

Court of Civil Appeals of Texas, Waco.

June 26, 1974.

Rehearing Denied July 18, 1974.

Kelsoe & Paternostro (R. Jack Ayres, Jr.), Dallas, for appellant.

Thompson, Coe, Cousins, Irons & Porter (Franklin H. Perry), Dallas, for appellee.

## OPINION

JAMES, Justice.

This is a suit growing out of a bailment contract by a manufacturer of sheets and pillow cases against a warehouse for damages for loss of merchandise. A trial before a jury resulted in a judgment in favor of Plaintiff-Appellee Springs Mills, Inc., against the Defendant-Appellant Texas Warehouse Co. of Dallas, Inc., for $47,253.15 plus pre-judgment interest in the amount of $18,901.26 and costs. Defendant-Appellant appeals on eighty-three points of error. We affirm the trial court's judgment.

Plaintiff-Appellee Springs Mills, Inc., is a manufacturer of, among other things, sheets and pillow cases, with the plant manufacturing same and Consumer Service Division being located in Lancaster, South Carolina. Defendant-Appellant Texas Warehouse Co. of Dallas, Inc., is in the warehouse business, its warehouse being located in Dallas, Texas.

Springs Mills entered into a written agreement with Texas Warehouse commencing on June 1, 1964 and running until May 31, 1965, which was renewed by a letter agreement on the same terms and conditions as the original contract, and which extended the agreement another year, to May 31, 1966. The parties continued their relationship without any additional written memoranda until on or about September 15, 1966, at which last-named date their relationship was terminated.

The contract in effect contemplated and provided that Springs Mills would ship sheets and pillow cases to Texas Warehouse, and that Texas Warehouse would store same, and fill orders for shipment of merchandise from the warehouse to customers of Springs Mills. The contract also provided for the basis by which Texas Warehouse would be paid for its services, and also other details not necessary to be enumerated, except the following language which is pertinent to our controversy, to wit:

"The merchandise of Manufacturer (Springs Mills) in Service Company's (Texas Warehouse's) premises shall be, and remain, the exclusive property of

Manufacturer, *it being understood that Service Company is acting hereunder as the bailee of Manufacturer and subject to the obligations of keeping said property insured as provided in paragraph (1), which shall have all the rights and be subject only to the obligations and liabilities of a bailee under the laws of the State of Texas.* Service Company shall in no event be liable for more than *manufacturer's cost of any lost or damaged property* nor for special or consequential damages, irrespective of how the loss or damage shall have been caused...........

"Service Company shall not be liable for the delay or nonperformance hereunder resulting from acts of God, fire, the elements, strikes, labor disputes, or any other cause beyond its control." (emphasis supplied).

The trial court submitted two special issues to the jury, which found:

(1) That during the times in question Springs Mills delivered to Texas Warehouse a quantity of sheets and pillow cases which Texas Warehouse neither returned to Springs Mills nor to any other pursuant to Springs Mills's directions.

(2) The manufacturer's cost of the goods which Texas Warehouse failed to return was $47,253.15.

The trial court in its judgment held that "the Defendant is liable as a matter of law, but for the dispute in the evidence as to the fact of any shortage, and the amount of the damage", and the jury having resolved these issues in favor of the Plaintiff, the trial court pursuant to the jury verdict entered judgment in favor of Plaintiff Springs Mills against Defendant Texas Warehouse in the amount of $47,253.15 plus interest at 6% per annum from September 15, 1966 until the date of judgment (June 6, 1973) in the amount of $18,901.26, plus interest from date of judgment and costs.

In order to place Appellant's points of error in proper context, a statement of some of the background facts is necessary.

Plaintiff Springs Mills manufactures the sheets and pillow cases at a plant known as "Grace Bleachery" located at Lancaster, South Carolina. About two-tenths of a mile from the Bleachery is Plaintiff's "Consumer Service Division", which employs some 780 people, and in which the financial, bookkeeping, and inventory records and computer operations are kept and carried on.

Pursuant to the contract and extensions thereof, between Springs Mills and Texas Warehouse, Plaintiff Springs Mills shipped sheets and pillow cases to Defendant Texas Warehouse from the commencement of the contract (June 1, 1964) until on or about September 15, 1966.

Charles Watford, who was at the time of trial the Comptroller of the Knit Fabrics Division of Springs Mills but who was during the times in controversy an internal auditor of Plaintiff in the Consumer Service Division, testified as follows concerning the practice pursued when shipments were made from Grace Bleachery to Defendant Texas Warehouse: The computer (an International Business Machines Model 1401) at Consumer Service Division would prepare a bill of lading, and at the same time prepare an invoice covering each shipment, from data "prepared by the various individuals that are assigned this responsibility." One or more copies of the bill of lading and invoice would be sent to Grace Bleachery so that the items and quantities listed on the bill of lading could be physically assembled for shipment to Texas Warehouse. The Bleachery had employees called "order pickers" who took a copy of the bill of lading into the warehouse and physically picked the items in the quantities indicated and placed them on a "buggy." In the event an item listed on the bill of lading was not available in the Bleachery, the picker marked a circle around that item. In the event a listed item was available, but not available in the quantity called for, the picker marked a change in the shown quantity to correspond with the quantity actually available

and placed on the buggy. Then the buggy was rolled to the loading dock where the shipment was checked by another of Plaintiff's employees called a "checker." The checker physically checked and counted the items on the buggy as they were loaded on the carrier for shipment. The checker likewise had in his hands one or more copies of the bill of lading, and he marked his copy or copies so as to cause same to accurately reflect the items and quantities which were actually loaded on the carrier for shipment to the Defendant.

When a given shipment was received by Defendant Texas Warehouse, the Defendant issued its warehouse receipt, at least one copy of which was forwarded to Plaintiff at its Consumer Service Division. When the warehouse receipt of a given shipment arrived at Consumer Service Division, it was matched up with the bill of lading prepared by Springs Mills of that same shipment. In the event the Defendant's warehouse receipt showed items and/or quantities thereof different to the Plaintiff's corresponding bill of lading, *the Defendant's count was accepted by Plaintiff* as correct. In other words, any discrepancies between Plaintiff's bill of lading and Defendant's warehouse receipt were resolved by Plaintiff in favor of the Defendant.

Mr. Watford testified that he personally matched up and compared the bills of lading of all the Plaintiff's shipments made to the warehouse receipts, and resolved all discrepancies between them in favor of the Defendant's warehouse receipts.

At the trial, Plaintiff introduced in evidence the bills of lading (Plaintiff's Exhibits 101 to 251) showing the merchandise shipped from Grace Bleachery to Texas Warehouse. The warehouse receipts issued by the Defendant upon receipt of the goods in Dallas were also put into evidence when the quantities shown thereon differed from the Plaintiff's bills of lading. (Plaintiff's Exhibits 101–126 and 250–251).

The merchandise was shipped from Dallas (from Texas Warehouse) on order of the Plaintiff to Plaintiff's customers by means of sales invoices (Plaintiff's Exhibits 10–29), and merchandise returns, adjustments and credits were made by credit memoranda (Plaintiff's Exhibits 252–254 and 256–281).

Appellant's Point of Error One complains of the trial court's admitting into evidence Plaintiff's Exhibits 101 through 251, the bills of lading and warehouse receipts hereinabove discussed, contending that they are hearsay, that no proper predicate for the authenticity of the computer process by which such exhibits were produced was made under Article 3737e, Vernon's Annotated Texas Civil Statutes, (Business Records Act), and that such exhibits were not the best evidence of the facts to be proved thereby. We overrule these contentions.

The pertinent portions of Article 3737e, V.A.T.S., commonly referred to as the Business Records Act, read as follows (emphasis supplied):

"Competence of record as evidence

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course if that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition *or reasonably soon thereafter.*

"Proof of identity and mode of preparation; lack of personal knowledge.

"Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility."

■ Let us first discuss the status of the bills of lading. Testimony shows without contradiction that these bills of lading are business records of Springs Mills, prepared in the ordinary course of business, made at or near the time of shipment of the merchandise listed thereon, and prepared "on a computer from data prepared by the various individuals that are assigned this responsibility;" and then when each bill of lading goes to the Bleachery for the purpose of filling the orders for shipment, each item thereon is verified by the "order picker" in the Bleachery warehouse and then verified a second time by the "order checker" at the loading platform, in the manner hereinabove described. Then, the accuracy of the bill of lading is verified a third time when the Defendant's warehouse receipt arrives back at Plaintiff's Consumer Service Division, when it is compared and checked against Defendant's warehouse receipt. As stated before, where a discrepancy occurred between bill of lading and warehouse receipt, the Defendant's figures in the warehouse receipt were accepted as correct.

Appellant says the bills of lading are hearsay as to his client. Of course they are hearsay, but they have been introduced into evidence accompanied by proof to comply with Article 3737e, V.A.T.S., which makes them an exception to the hearsay rule. Appellant says the trial court by admitting these bills of lading in evidence violated the rule enunciated by our Supreme Court in Cooper Petroleum Co. v. La Gloria Oil and Gas Co. (Tex.Sup.Ct.1969) 436 S.W.2d 889.

In *Cooper*, the plaintiff's invoices were held to be improperly admitted into evidence as plaintiff's business records because it was not shown that "some employee or representative who either made the record or transmitted the information to another to record must have had *personal knowledge* of the act, event, or condition.

Our case is not *Cooper* at all. In the case at bar, the "order pickers" had "personal knowledge of the act, event or condition." So did the "order checkers" at the loading platform. Section 1(c) of Article 3737e provides that the "memorandum" is competent evidence as a business record if it was made "at or near the time of the act, event or condition *or reasonably soon thereafter*." Under the facts of the case at bar, we cannot see how Article 3737e could have been more fully complied with.

■ Now let us discuss the Defendant's warehouse receipts which are a part of the Plaintiff's exhibits in question. Appellant's counsel says the warehouse receipts are hearsay as to his client, Texas Warehouse. They are hearsay; however, they fall under another exception to the hearsay rule; namely, as admissions. They are on the letterheads of Appellant, they are the acts, acknowledgements, and *admissions* of Appellant, that the merchandise listed thereon had been received in the quantities indicated. It is not necessary for these warehouse receipts to be proved up by Plaintiff against Defendant under the requirements of Article 3737e, even though they may also happen to be business records of the Defendant. The statute is not an exclusive ground for admissibility for any type of evidence, especially if, as here, they constitute admissions of

the Defendant, or declarations against Defendant's interest. See volume 2, McCormick and Ray, Texas Law of Evidence, Second Edition, Sections 1121 and 1252. However, be that as it may, the records were sufficiently proved up through the testimony of Mrs. Barbara Taylor, President of Texas Warehouse, as business records of the Defendant. She testified that when a shipment came in to Texas Warehouse, that Defendant's employees checked the items and quantities on the Plaintiff's bill of lading and sometimes the freight bill indicating any discrepancies or damaged items, and then the Defendant prepared and issued its warehouse receipt which accurately reflected the items and quantities actually received, which was forwarded to the party making the shipment. She said her files customarily kept for each shipment (received by Defendant) one copy each of the bill of lading, the freight bill, and warehouse receipt. Although all the Plaintiff's Exhibits 101 through 251 (containing the bills of lading and warehouse receipts in question) were already in evidence at the time Mrs. Taylor testified, as well as other of Defendant's employees who testified, Defendant never at any time questioned the authenticity or accuracy of any of the warehouse receipts in evidence.

■ Some of the bills of lading in evidence appeared to be copies of the originals. The computer customarily prepared seven copies each of the bill of lading and invoice. Appellant complains that these were not the "best evidence of the facts to be proved thereby," and therefore the trial court erred in admitting them into evidence. We overrule this contention. Mr. Charles Watford, the witness who was an internal auditor for Plaintiff Springs Mills during the times in question, testified that it was a part of his responsibility to verify the authenticity and accuracy of all inventory records, including bills of lading, sales invoices, warehouse receipts, and credit memoranda. He testified that when he assembled all the inventory documents concrening the shipments to Texas Warehouse that he used original bills of lading, invoices, and credit memoranda whenever they were available, that he made diligent search for the originals, and in instances wherein he could not find the originals, that he substituted copies therefor. Under this proof, the trial court acted properly in allowing these copies to come into evidence. De Garcia v. Johnson (San Antonio Tex.Civ.App.1954) 265 S.W.2d 692, writ refused; volume 2, McCormick and Ray, Texas Law of Evidence, Second Edition, Sections 1572 and 1573.

Appellant's points two and three complain that Plaintiff's Exhibits 10 through 29 inclusive as well as Plaintiff's Exhibits 251 through 281 should have been excluded by the trial court, contending they were hearsay, that no proper predicate had been laid for their admissibility under Article 3737e, V.A.T.S., that the exhibits were based wholly or partly on summary or narrative information which was also hearsay, and that they were not the best evidence. We overrule these contentions.

Plaintiff's Exhibits 10 through 21 consisted of manila folders containing approximately 1400 sales invoices which were prepared by Plaintiff Springs Mills's Dallas Sales Office for shipment of merchandise from Defendant's warehouse to Plaintiff's customers. Plaintiff's Exhibits 22 through 29 were also Plaintiff's sales invoices prepared by Plaintiff in the same manner. Plaintiff's Exhibits 251 through 281 (excepting 255 which was nonexistent) consisted of documents which were either bills of lading, invoices, and credit memoranda prepared by Plaintiff, or else warehouse receipts prepared by Defendant. Suffice it to say that through the testimony of Charles Watford, Plaintiff's auditor, and personnel of Plaintiff's Dallas Sales Office, these exhibits were all properly proved up by Plaintiff as Plaintiff's business records under Article

3737e. The warehouse receipts were admissible against Defendant as admissions.

■■ Appellant's Point four complains of the testimony of Charles Watford as an expert witness in the field of computer programming and operation. We overrule this point. As stated above, Mr. Watford at the time of trial was the Comptroller of the Knit Fabrics Division of Springs Mills, but was during the times in controversy an internal auditor for Plaintiff. He had used computers personally ever since June of 1964, about nine years prior to the time he testified, and testified at great length on direct and cross-examination concerning the "mechanics" or physical aspects of the use of the computer. He told about how computer cards are pulled and marked with a "mark sensing" pencil by order clerks and delivered to the computer room, and like matters, all of which demonstrated that he knew quite a bit about computers and how to use them, and how to read and interpret computer printouts. He had attended several seminars sponsored by the National Association of Accountants, the Institute of Internal Auditors, and several private computer companies, and seminars on auditing data processing. He testified the computer used by Plaintiff was an International Business Machines Model 1401, that it had been in use at Plaintiff's Consumer Service Division for several years, and that it had been proven reliable. The record shows Mr. Watford's qualifications as an expert witness in the computer field to be sufficient, and the trial court properly admitted his expert testimony. The qualification of an expert witness is addressed to the sound discretion of the trial court, and his ruling thereon will not be disturbed unless it appears that his ruling is clearly erroneous. See Foley Bros. Dry Goods Co. v. Settegast (Galveston Tex. Civ.App.1939) 133 S.W.2d 228, writ refused.

By points of error five, six, and seven, Appellant complains of the admission into evidence of Plaintiff's Exhibits 3, 4, and 5, same being compilations or summaries of information to show the amount of loss. Appellant contends these exhibits are hearsay, no predicate was laid for their admissibility under Article 3737e, V.A.T.S., no predicate was laid for computer authenticity, they violated the best evidence rule, and they were based upon other records that were hearsay. We overrule these contentions.

Charles Watford, Plaintiff's auditor, prepared these exhibits. They were all prepared from the bills of lading, warehouse receipts, sales invoices, and credit memoranda hereinabove referred to, all of which were properly admitted by the trial court into evidence as we have hereinabove pointed out. Plaintiff's Exhibit 3 was a record of transactions beginning with the first shipment made from Plaintiff to Defendant and ending April 29, 1966. Plaintiff's Exhibit 4 is a summary of additional transactions from April 29, 1966 through June 4, 1966. Plaintiff's Exhibit 5 was a further summary of additional transactions from June 4, 1966 through September 15, 1966, the end of the dealings between the parties. Exhibit 5 also contains data from the final inventory (Plaintiff's Exhibit 32).

This final inventory was made as of September 15, 1966, and was a physical count or inventory of all Plaintiff's sheets and pillow cases that were at that time in Defendant's warehouse. Three people counted everything listed in this final inventory, one of whom was Mary Mactee, an employee of Defendant Texas Warehouse. Defendant was furnished a copy of this inventory. Mrs. Barbara Taylor, Defendant's president, testified that this inventory was correct.

As stated above, Exhibits 3, 4, and 5 were prepared only from the bills of lading, sales invoices, credit memoranda, and warehouse receipts, all of which were properly admitted into evidence, together with Plaintiff's Exhibit No. 32, the final

physical inventory. The bills of lading and warehouse receipts represented shipments by Springs Mills to Texas Warehouse, the sales invoices represent shipments from Texas Warehouse to the customers of Springs Mills, while the credit memoranda and warehouse receipts for returns represent adjustments and credits for returns made back to Texas Warehouse. The final physical inventory, of course, was used in the computations to give the Defendant credit for all of Plaintiff's property actually on hand when the relationship between the parties terminated on September 15, 1966. After this inventory was completed, this property was shipped back to Plaintiff.

Before all these documents were fed into the computer, Mr. Watford personally checked all bills of lading against the warehouse receipts issued by Defendant, and when a discrepancy was noted, the Defendant's count was accepted. He also personally went through all the sales invoices and verified the sequence. Then after the computer printouts were completed, he verified each exhibit by checking the numbering on the computer run against the invoices in evidence, as well as verifying the quantities shown on the exhibit.

The computer printout for each of Plaintiff's Exhibits 3, 4, and 5, was in effect a summary of all the charges made against the Defendant offset by all the credits to which Defendant was entitled, which in effect showed a recapitulation of how much net shortage existed of Plaintiff's sheets and pillow cases in Defendant's Warehouse as of September 15, 1966. To arrive at a dollar value of the net shortage, Plaintiff arrived at "manufacturer's cost" by taking invoice price of the goods less 13.55% which Mr. Watford testified was the proper manner of arriving at manufacturer's cost. By Plaintiff's Exhibits 3, 4, and 5, it was shown that the net shortage of Plaintiff's goods in Defendant's warehouse amounted to $47,253.15, which was the amount found by the jury, in answer to Special Issue No. 2.

■ A summary of voluminous records may, in the discretion of the trial court, be admitted into evidence to expedite the trial and aid the trier of fact. This rule assumes that the records upon which the summary is based are themselves admissible. Cooper Petroleum Co. v. La Gloria Oil and Gas Co. (Tex.Sup.Ct.1969) 436 S. W.2d 889; Wigmore on Evidence, 3rd Edition, 1940, section 1230.

■ Likewise, such a summary is not rendered inadmissible, where based upon records which are themselves legally competent evidence, when such summary is prepared by a computer. See Plyler v. City of Pearland (Houston 1st Tex.Civ. App.1972) 489 S.W.2d 459, error refused NRE. In the case at bar, the computer used was shown to be reliable; however, the final computation did not have to depend upon the computer's accuracy. Its computations were checked personally by Plaintiff's auditor, Mr. Watford.

Plaintiff's Exhibits 3, 4, and 5 did not have to be proven up pursuant to Article 3737e, V.A.T.S., because they were not "business records" themselves, but summaries of and based upon business records which were all properly admitted in evidence.

Appellant complains that out of the some 1400 invoices in evidence, that 29 were missing. The Plaintiff's invoices were consecutively numbered, and 29 numbers were missing when Plaintiff offered the invoices into evidence. Later eight (8) were located, leaving 21 still unaccounted for by Plaintiff. The record shows without dispute that no charge was made against the Defendant as a result of these invoices and they did not figure into any computations.

Appellant's points eleven through twenty-one (except seventeen) as well as sixty-seven through eighty-two, complain of the trial court's submission of Special Issues No. 1 (fact of damage) and No. 2 (amount

of damage), contending that there is no evidence and insufficient evidence, to support such issues, and that a judgment could not be legally based upon these two issues. Appellant further contends that all ultimate issues of fact were not submitted, and through points twenty-two through sixty-six, Appellant complains of the trial court's refusal to submit forty-five requested special issues. We overrule these contentions.

The contract between the parties specifically provided that Defendant would have all the rights and be subject only to the obligations and liabilities of a bailee under the laws of the State of Texas, and would be liable for manufacturer's cost of any lost or damaged property. Special issues 1 and 2 answered by the jury are couched in language that accords with the contract, and with the law of bailments in Texas as applicable to this case.

Our Supreme Court has enunciated the law of bailments which governs the case at bar in Trammell v. Whitlock (Tex.Sup.Ct. 1951) 150 Tex. 500, 242 S.W.2d 157 as follows:

". . . . the burden of proof on the whole case, including the issue of negligence, is on the respondent bailor, but as stated in Wigmore on Evidence, 3rd Ed., § 2508, 'Where goods have been committed to a bailee, and have either been lost or been returned in a damaged condition, and the bailee's liability depends upon his negligence, the fact of negligence may be presumed, placing on the bailee at least the duty of producing evidence of some other cause of loss or injury.' Without prejudice to the burden of proof being at all times on the bailor, the bailor under this latter rule makes a prima facie or presumptive case of negligence by proving the bailment and either the return of the goods by the bailee in a damaged condition, not existing at the time of their delivery to him, or a failure by him to return them at all. The rule is said to be based on the just and common sense view that the party in possession or control of an article is more likely to know and more properly charged with explaining the damage to it or disappearance of it than the bailor who entrusted it to his care."

In the case at bar the Plaintiff established a "prima facie or presumptive case of negligence" against the Defendant by proving the fact of bailment and the failure on the part of Defendant to return a quantity of the bailed goods and the dollar value (based on manufacturer's cost) of such goods. This presumption of negligence on the part of the Defendant was never rebutted by the Defendant.

Appellant's points twenty-two through sixty-six complain of the trial court's refusal to submit forty-five requested special issues. These points were not properly preserved. Rule 418, Tex.Rules of Civil Procedure; Isenhower v. Bell (Tex.Sup. Ct.1963), 365 S.W.2d 354 at p. 358. However, we have carefully examined the record with reference to these points and find them to be without merit.

Appellant's point seventeen complains of the trial court's rendition of judgment against Defendant for pre-judgment interest at 6% per annum from the date of the final inventory (September 15, 1966) to the date of judgment (June 6, 1973) in the amount of $18,901.26. We overrule this point. Pre-judgment interest as damages is recoverable as a matter of law when the principal damages are fixed by conditions existing at the time the injury is inflicted. Watkins v. Junker (1897) 90 Tex. 584, 40 S.W. 11; Texas Company v. State (Tex.Sup.Ct.1955) 154 Tex. 494, 281 S.W.2d 83; Comet Aluminum Co. v. Dibrell (Tex.Sup.Ct.1970) 450 S.W.2d 56.

All of Appellant's remaining points have been carefully considered, and are overruled. Judgment of the trial court is accordingly affirmed.

Affirmed.