**FARMERS' STATE BANK & TRUST CO. et al. v. GORMAN HOME REFINERY et al.**
(No. 879–4470.)

Commission of Appeals of Texas, Section B.
Feb. 29, 1928.

1. **Joint-stock companies and business trusts**
**⊸19—Whether payee of note contracted to look only to assets of so-called trust for payment held for jury.**

In suit against common-law trust and shareholders to recover on note executed in name of trust, question whether payee bank contracted with representatives of trust that it would look only to assets of trust for payment of indebtedness *held* for jury.

2. **Contracts ⊸15, 30—No precise words are necessary to completeness of verbal contract, but assent to same thing is agreement.**

In case of verbal contract, no precise words are necessary to its completeness, but if parties assent to same thing in same sense there is agreement, whatever words are employed.

3. **Contracts ⊸147(1)—Intention of parties constitutes the contract.**

What parties intended by their agreement is the contract, whether same be expressly stated in words or by mere implication.

4. **Evidence ⊸65—Every one is presumed to know law.**

Every one is presumed to know the law.

5. **Evidence ⊸65—Bank cashier taking notes from so-called trust was presumed to know that it was partnership, and that, in absence of contract, individual shareholders were personally liable as partners.**

Bank cashier taking note from unincorporated business trust and agreeing that shareholders should not be personally liable was bound to know that it was partnership, and that, in absence of contract to contrary, individual shareholders were personally liable as partners.

6. **Evidence ⊸219(1)—Conduct of party may be given in evidence when it tends to admit fact in issue.**

Even conduct of party may be given in evidence when it tends to admit fact in issue.

7. **Joint-stock companies and business trusts ⊸19—Evidence held to sustain verdict that payee of note, executed by business trust, contracted to exempt shareholders from personal liability.**

In suit against so-called business trust and its shareholders to recover, amongst other things, against individual shareholders on note executed in name of trust, evidence *held* sufficient to sustain verdict that payee contracted to exempt shareholders from personal liability.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by the Farmers' State Bank & Trust Company and others against the Gorman Home Refinery and others. Judgment denying recovery against certain defendants was affirmed by the Court of Civil Appeals (273 S. W. 694), and plaintiffs bring error. Affirmed.

Sam R. Scott and Witt, Terrell & Witt, all of Waco, J. R. Stubblefield, Chas. C. Robey, Burkett, Orr & McCarty, and Dabney & Callaway, all of Eastland, and R. F. Higgins, of Marlin, for plaintiffs in error.

J. L. Alford, of Rising Star, Turner, Seaberry & Springer, and J. Frank Sparks, all of Eastland, S. R. Carruth, of Meridian, and Gib Callaway, of Dallas, for defendants in error.

SPEER, J. Plaintiff in error Farmers' State Bank & Trust Company filed its suit against the Gorman Home Refinery, a so-called Massachusetts trust, and a large number of its shareholders, estimated by counsel at the bar to be in the neighborhood of 1,000, to recover, amongst other things, against the individual shareholders upon a certain note executed in the name of the Gorman Home Refinery. The pleadings of the parties were lengthy and quite a number of issues were presented, but in the view we have of the case no further statement is necessary. The trial court rendered judgment upon a verdict that the plaintiffs take nothing by their suit against the individual defendant shareholders, and that judgment was affirmed by the Court of Civil Appeals. 273 S. W. 694.

Our conclusion upon a single issue makes it unnecessary to consider any other question presented in the application for writ of error. The first issue submitted was:

"At the time the indebtedness sued for herein arose, was it agreed and understood between the Farmers' State Bank & Trust Company and the Gorman Home Refinery that the said bank should look only to the assets of the said refinery for the payment of said indebtedness?"

To this issue the jury answered, "Yes."

The plaintiffs duly objected to the submission of the issue upon the ground there was no evidence to authorize such submission, and the complaint was urged in the application for the writ of error and stressed in the oral arguments upon submission.

The cashier of the bank and the trustees of the refinery who negotiated the loan forming the basis of the suit were not available as witnesses, and the verdict is sought to be maintained upon other evidence, for the most part, if not wholly, circumstantial.

The witness J. T. Neill, who was president of the refinery at the time certain renewal notes were executed (but which renewal notes went out of the case on exception), testified:

"At the time these notes were made there was a conversation between me and the officer of the bank with regard to renewal. There was a conversation concerning the liability, or who

was liable on these notes and who would be looked to for the payment. We were assured that we would not be held for these notes if we would go on them. Mr. Morrell [the cashier] was talking for the bank in making these notes. We were assured that we would not be held responsible on these notes, for the payment of them."

F. S. Perry, one of the trustees of the refinery, testifying to the same transaction, said:

"At the time that these notes were made, Mr. Morrell acted for the bank in that transaction. As to whether there was any statement or understanding or agreement between us and the bank at the time as to who they would look to for the payment of these notes, the first time that we signed notes individually, these were given in renewal of the other notes. He did not go over the same thing, but the first time that we signed the notes individually there was a conversation that took place that caused us to sign them, and that was to the effect that it was the refinery that was to be held, and that we individually would not be held, that we would not be personally responsible."

The two deeds of trust which secured the original indebtedness, executed at the time the notes were signed contained these provisions:

"That the Gorman Home Refinery, a common-law trust, acting by its trustees J. M. Thomas and W. A. Hickey [and] that whereas, the Gorman Home Refinery, acting through and by its trustees J. M. Thomas and W. A. Hickey, under a common-law trust."

The declaration of trust under which the trustees were acting contained the following:

"Said board of trustees and board of directors shall not have power to bind the shareholders personally, but in every written contract which they shall enter into relating to the business of this estate, and specially in all printed certificates issued evidencing shares purchased by the public, specific reference shall be made to this declaration of trust, and the person, firm, corporation, or association so contracting with them or purchasing shares shall look only to the funds and property of the estate held by said trustees for the payment of any judgment or decree, debt, damage, or any money or other obligation, that may become due and payable in any wise by reason thereof, and neither said trustees or the shareholders, present or future, shall ever be personally liable therefor, or for any debt incurred or engagement or contract entered into by said board of trustees, or by any officer, agent, servant, or employee acting under them for or on behalf of this estate, or for any other form of liability, whether arising from contract, express or implied, or from tort, or in any way whatsoever, it being the purpose of the trust estate hereby created to vest full and absolute control of the trust properties in said trustees and to exempt them and the shareholders hereunder, present or future, from all manner of liability whatsoever, as hereinabove fully stated."

The jury found that at the time the indebtedness sued on was incurred the plaintiff bank knew of those provisions in the declaration of trust which forbade the officers and agents of the Gorman Home Refinery from binding the shareholders of the refinery to a personal liability for its debt, and there is abundant evidence to justify this finding. Indeed, such fact is not controverted by plaintiffs in error.

[1-3] We are of the opinion the evidence was sufficient to authorize the submission of the issue whether or not the plaintiff in error Farmers' State Bank & Trust Company contracted with the representatives of the refinery company that it would look only to the assets of the refinery for the payment of its indebtedness. Much was said at the submission as to the distinction between express and implied contracts, the plaintiffs in error contending that it is only the first class, or express contract, that will relieve the shareholders of personal liability, and the defendants in error replying that, even if this contention be conceded, nevertheless the finding of the jury establishes an express contract by circumstances, or, in other words, by implication of fact. We attach no importance to the attempted distinction. Implied covenants or agreements are most usually applied to written contracts, meaning the obligations which the law reads into the instrument in consequence of the express terms. It is in no sense in that case proof of the contract by circumstances at all. In the case of a verbal contract, no precise words are necessary to its completeness. If the parties assent to the same thing, in the same sense there is agreement whatever words are employed, and what the parties intended by their agreement is the contract, whether the same be expressly stated in words or by necessary implication. The verdict has established that it was agreed and understood between the parties that the bank should look only to the assets of the refinery for the payment of the indebtedness. This finding itself does not *expressly* find that it was not to look to the individual shareholders for payment, but such is the necessary meaning of the verdict. And in like manner the agreement not to hold liable the shareholders could have been one by implication from the effect of the language used in the verbal agreement.

[4, 5] We attach no importance to the jury's finding that the bank knew of the inhibition against the trustees binding the shareholders for the refinery's debts further than this: Such finding is not upon any material issue as such in the case, but it does indicate a familiarity on the part of the bank officials with the limitations upon the power of the trustees, and in connection with the proved repeated statements of the representatives of the bank, that shareholders were not personally liable, tends to show that the

parties had contracted for such nonliability. Every one is presumed to know the law, and therefore to know that these so-called trusts are partnerships, and that, in the absence of contract to the contrary, the individual shareholders are personally liable as partners. This being true, when the cashier, at the time of taking renewal notes of the indebtedness recovered on, stated to the representatives of the refinery as an inducement to them to execute the renewals personally that the bank was looking to the refinery property for payment and that they would not be liable personally, he knew if such shareholders were not liable personally it was only because there had been a contract for such exemption, for otherwise they were and would remain liable personally, and his statements were not true. It is argued by plaintiffs in error that these statements from the cashier proceeded from a misconception of the law, thinking the stipulations in the constating instrument had the legal effect to exempt shareholders from liability. It is quite true, the testimony is capable of this interpretation, but it is equally true that it is capable of the interpretation we have given it. The jury might well have found that the cashier's statements that the individual shareholders were not to be held liable personally was because they had been released at the time of making the original debt. It cannot be said necessarily his statement was a guaranty against further personal liability by reason of the execution of the renewal notes, for if the individual signers were already liable under the original contract of the indebtedness, such liability would not have been destroyed by the execution of the renewal notes. Such expressions of nonliability of the shareholders was in the nature of an admission that they had been exempted in the only way possible; that is, by timely contract. Even though plaintiff in error's cashier was laboring under the impression that, as matter of law, individual shareholders could not be held liable, it renders it all the more probable he made the agreement of exemption contended for.

[6] The rule we are applying has its analogy in that applied to offers of compromise as evidence of admission of liability. It is well established that while an offer to compromise and thus buy one's peace is itself no evidence of such admission, yet, if in making such offer, independent of such offer, a statement is made which tends to show an admission of liability, it will be heard in evidence, the same as any other admission against interest. 22 C. J. 314, § 349. Even the conduct of the party may be given in evidence when it tends to admit the fact in issue. Id., §§ 317, 353.

[7] Believing that the evidence quoted by us, in the light in the circumstances, has probative force to sustain the verdict upon the issue of contract exemption from personal liability of the shareholders, we recommend that the judgments of both courts be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals affirmed.