**H. D. MERRELL, Jr., Appellant,**

v.

**Rita Mae MERRELL, Appellee.**

**No. 845.**

Court of Civil Appeals of Texas, Tyler.

Aug. 28, 1975.

Rehearing Denied Sept. 18, 1975.

Jerry S. Hughes, Reyburn U. Anderson, Welz, Anderson, Peters & Hughes, Victor C. McCrea, Jr., Dallas, for appellant.

William C. Koons, Geary, Brice, Barron & Stahl, Dallas, for appellee.

Robert A. Fanning, Fanning & Harper, Dallas, for intervenor.

McKAY, Justice.

This is a divorce case involving division of property, and it is also an action for attor-

neys' fees by intervening attorneys who previously represented appellant in the divorce case. After trial, before the court without a jury, judgment was rendered granting the divorce, dividing the property and awarding attorneys' fees.

Appellee brought this suit for divorce in Domestic Relations Court No. 3, Dallas County, on July 16, 1973. Fanning & Harper, attorneys, filed an answer for appellant on July 23, 1973. Almost one year later, on July 16, 1974, Fanning & Harper filed a motion to withdraw as counsel for appellant, and such motion was granted by order of the trial court the following day. Thereafter, on August 14, 1974, Fanning & Harper filed suit against appellant for attorneys' fees for representing appellant in this case, in the 192nd District Court of Dallas County. On September 4, 1974, while that case was pending in the 192nd District Court, Fanning & Harper filed a petition in intervention in the case at bar praying for the same relief against appellant as in the district court. Appellant then filed a plea in abatement alleging that the same cause of action against the same party containing the same subject matter and issues had been filed and was pending in the 192nd District Court, and prayed that the petition in intervention be abated inasmuch as a trial in the district court could and would determine all the issues between the parties.

The trial court overruled the plea in abatement, and appellant complains by his point one that such action was error. We sustain this point.

Appellant argues first that the Domestic Relations Court No. 3 is not a court of general jurisdiction, and therefore had no jurisdiction to consider intervenor's debt action. The Court of Domestic Relations No. 3 of Dallas County was created by the Legislature by Art. 2338–9b, V.A.T.S., and the jurisdiction of the court is set out as applicable here:

" * * * Said Court of Domestic Relations No. 3 shall have jurisdiction concurrent with the District Courts and Courts of Domestic Relations situated in said county of all cases involving * * * : and of all divorce and marriage annulment cases, including the adjustment of property rights * * * and any and every other matter incident to divorce or annulment proceedings * * * : and all other cases involving justiciable controversies and differences between spouses * * * *or between any of these and third persons*, corporations, trustees or other legal entities, which are now, or may hereafter be, within the jurisdiction of the District or County Courts * * * *."

It appears from the language of the statute that Domestic Relations Court No. 3 would have jurisdiction to entertain and adjudicate the intervention by Intervenors for attorneys' fees unless the filing and the pendency of the suit in the district court would prevent it from so doing when the question was raised by appellant's plea in abatement. *Benson v. Fulmore*, 269 S.W. 71 (Tex.Com.App.1925) holds that the pendency of a prior suit for the same cause of action between the same parties in a court of competent jurisdiction will abate a later suit. *Long v. Long*, 269 S.W. 207 (Tex.Civ. App.—Dallas, 1925, no writ) holds that a plea in abatement should be sustained when there is a prior suit between the same parties involving the same subject in another court of equal jurisdiction. In probably the most often cited case on this point, the Supreme Court in *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063 (1926) held that a plea in abatement should be sustained when a prior suit is filed in a court of competent jurisdiction with the same subject matter and parties (citing *Benson v. Fulmore* and *Long v. Long*) because jurisdiction attached when the first suit is brought and the suit is therefore "withdrawn from the authority and jurisdiction of all courts of coordinate power."

In *Barrier v. Lowery*, 118 Tex. 227, 11 S.W.2d 298 (Tex.Com.App.1928), the court held "The district court for the Ninety-

Fifth district having acquired jurisdiction of the subject-matter involved in relators' cross-action, its right to determine the questions therein involved was exclusive, and could not be trenched upon by any other court." The court in *Barrier* pointed out that there was some confusion on the question prior to the decision of *Cleveland v. Ward,* supra, but that the court in that case "distinctly held that jurisdiction of a district court once acquired cannot be destroyed, diminished, or suspended by any one of the parties, pending an action in another court, and any judgment or order of the latter is void so far as it conflicts with any judgment or order of the court first acquiring jurisdiction."

The following cases cite or quote *Benson v. Fulmore,* supra, *Long v. Long,* supra, or *Cleveland v. Ward,* supra; *Davisson v. Eastland County,* 6 S.W.2d 782 (Tex.Civ. App.—Eastland, 1927, affirmed 13 S.W.2d 673, Tex.Com.App.); *Dallas Development Co. v. Reagan,* 25 S.W.2d 240 (Tex.Civ.App. —Dallas, 1930, no writ); *Bowen v. First State Bank of Fate,* 37 S.W.2d 400 (Tex.Civ. App.—Texarkana, 1931, no writ); *Haney v. Temple Trust Co.,* 55 S.W.2d 891 (Tex.Civ. App.—Austin, 1932, writ dism.); *Clack v. Southwest Dairy Products Co.,* 95 S.W.2d 1038 (Tex.Civ.App.—Dallas, 1936, writ dism.); *Wheelis v. Wheelis,* 226 S.W.2d 224 (Tex.Civ.App.—Fort Worth, 1950, no writ); *Fulton Bag & Cotton Mills v. Valley Products Corp.,* 277 S.W.2d 241 (Tex.Civ.App.— Dallas, 1955, affirmed 155 Tex. 365, 286 S.W.2d 411); *Allied Finance Co. v. Shaw,* 373 S.W.2d 100 (Tex.Civ.App.—Fort Worth, 1963, writ ref'd, n.r.e.); *Chem-Gas Engineers, Inc. v. Texas Asphalt & Refining Co.,* 398 S.W.2d 143 (Tex.Civ.App.—Waco, 1966, no writ); *Ingram v. Ingram,* 380 S.W.2d 666 (Tex.Civ.App.—Dallas, 1964, writ dism.). The Rule has also been applied to habeas corpus cases. *Millikin v. Jeffrey,* 117 Tex. 134, 299 S.W. 393 (1927).

Intervenors argue that the parties are not the same in the instant case as they were in the district court suit. The record reveals that intervenors' petition in intervention names appellant only as a defendant the same as was done in the district court.

■ While the record here does not indicate there was any action taken or judgment rendered in the district court case, we believe the law is clear in Texas that the pendency of another prior suit for the same cause of action between the same parties in a court of competent jurisdiction will abate a later suit. The district court had jurisdiction of the subject matter and the parties (an answer was filed). We believe the trial court erred in overruling appellant's plea in abatement. Vol. 2, McDonald, Texas Civil Practice, Sec. 710.

■ Appellee and intervenors argue that appellant waived any objection to the overruling of his plea in abatement by failing to file a motion for new trial as required by Rule 325, T.R.C.P. We disagree with this contention.

Rule 325 provides:

"In cases of *motions for continuance,* or *for change of venue,* or *other preliminary motions* made and filed in the progress of the cause, the rulings of the court thereon shall be considered as acquiesced in, unless complained of in the motion for new trial; * * * Nothing in Rule 324 shall render a motion for new trial unnecessary in the instances mentioned in this Rule nor in instances of newly discovered evidence, misconduct, fraud or the like." (Emphasis added.)

Rule 324 provides that a motion for new trial is not necessary in a non-jury case.

We hold that a motion for new trial was not necessary to preserve appellant's point contending that the trial court erred in overruling his plea in abatement. A plea in abatement is not a *preliminary motion* in the same sense or of the same class as a motion for continuance or for change of venue. The ruling on the plea in abatement could have eliminated the intervenors from participation in this suit and therefore

the plea is not a preliminary motion as contemplated by Rule 325. *City of Roma v. Starr County*, 428 S.W.2d 851 (Tex.Civ.App. —San Antonio, 1968, writ ref'd, n.r.e.); *Peterson v. Peterson*, 502 S.W.2d 178 (Tex.Civ. App.—Houston 1st, 1973, no writ); *Williams v. Whitten*, 451 S.W.2d 535 (Tex.Civ. App.—Tyler, 1970, no writ).

It has been held that Rule 325 applies to matters not otherwise shown by the record. *Ingram v. Ingram,* supra; *Harmon v. City of Dallas*, 229 S.W.2d 825 (Tex.Civ.App.— Dallas, 1950, writ ref'd, n.r.e.). In the instant case, the plea in abatement and the court's ruling thereon are contained in and revealed by the record and therefore are before this court. Under such circumstances we think a motion for new trial was unnecessary.

By his second point appellant maintains the trial court erred in admitting into evidence the proposed property settlement which action probably caused the rendition of an improper judgment because it constituted an offer of compromise and settlement never accepted by the parties. We overrule this point.

The record reveals that the proposed property settlement agreement was offered into evidence for the purpose of showing it to be a part of the work product of counsel for appellee as well as intervenors in connection with the claim for attorneys' fees by the respective attorneys and for no other purpose. If admission of such evidence before the court in a non-jury case be error, and we do not agree that it was, we believe it to be harmless. In a trial before the court the admission of incompetent evidence will not generally require a reversal of the judgment when there was competent evidence to authorize its rendition, and it will ordinarily be assumed that the trial court disregarded such evidence. *Haynes v. Henderson*, 345 S.W.2d 857 (Tex. Civ.App.—Austin, 1961, writ ref'd, n.r.e.); *Gordon v. Pledger*, 271 S.W.2d 344 (Tex.Civ. App.—Galveston, 1954, writ ref'd, n.r.e.); *Taylor v. Guillory*, 439 S.W.2d 362 (Tex.Civ.

App.—Houston 1st, 1969, no writ); Rule 434, T.R.C.P.; 57 Tex.Jur.2d Trial, sec. 571, pp. 328–9.

Appellant's third point complains that the trial court abused its discretion by unjustly dividing the property of the parties, and he argues that the undisputed evidence shows that the five duplexes involved were acquired with money from his separate estate which was properly traced and not comingled. A review of the evidence seems to be necessary in passing upon this point.

According to appellant's testimony appellant and appellee married on July 7, 1972, and promptly thereafter they opened a joint savings account and a joint checking account. Appellant contributed $5,200 and appellee $4,300 to the savings account, and appellee contributed $900 to the checking account, but the record is silent as to appellant's original contribution to the joint checking account. Appellee's two children by a former marriage lived in the home part time, and when they were there she received $500 per month child support and deposited it in the joint checking account. Appellee received $158 per month on a promissory note and $150 per month from her father and deposited both amounts in the joint checking account. She sold the note for $6,000 and put that amount into the joint account.

Appellant further testified that they lived in appellee's apartment until the purchase of a house was completed, and that $11,993, in addition to the earnest money, was paid out of the joint account on such purchase. Title to the house was taken in both names, and both executed a note for $46,800 to Oak Cliff Savings and Loan, and payments were made on the house out of the joint account. The house was sold February 23, 1973, for $62,000, and a net of $11,149.96 was realized after all expenses were paid, and this net was deposited in the joint checking account and used as part payment on duplexes purchased. The check was made payable to both appellant and appellee, and both of them signed the deed to the purchaser.

On February 27, 1973, the purchase of five duplexes was completed. When the contract was signed to buy the duplexes a $10,000 check payable to the seller was written on the joint account, and both parties made application to the Oak Cliff Savings and Loan for a loan on each duplex. The loans were made and both signed the notes and title to the duplexes was taken in both names. The difference between the cost of the duplexes and the total of the loans came to approximately $85,000 which had been put into and drawn out of the joint account. Payments made monthly to the savings and loan were made from the joint account until the parties separated. There was no recital in the deeds that any of the duplexes, or the purchase price therefor, was the separate property of appellant, and he made no objection to title being taken in both names. Payments were also made out of the joint account for automobiles. A bank loan of approximately $45,000 was made and the note signed by both parties, and the proceeds went into the joint account. Appellee signed notes with appellant in these transactions for a total of approximately $350,000.

Appellant testified that he inherited some corporate stocks from the estate of his mother, and that he sold stocks worth approximately $100,000, and that such funds were used to finance the purchase of the duplexes. Under the record we are unable to conclude that such funds were properly traced as appellant's separate property and not comingled with appellee's separate property or the community property.

The record shows that appellant had many stock and bond transactions during the marriage. He bought and sold many shares of stock and some were bought short or on margin. Bonds were also bought on margin. Sometimes he would owe his brokerage firm several thousand dollars, and at other times he would have a credit with them.

At the time of the trial appellant was employed by an insurance company with a salary of $17,000, while appellee was a teller in a bank with a salary of $525 per month.

The trial court in its judgment awarded to appellee, among other items of property, two of the five duplexes bought by the parties during the marriage. Appellant maintains and argues all five duplexes were his separate property.

■ Section 3.63, Texas Family Code, provides that " * * * the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Courts are vested with wide discretionary authority in the division of property in a divorce suit, and in the absence of the abuse of such discretion, the trial court may divide the property, community or separate, in such a way as the court deems right and just. *Bell v. Bell*, 513 S.W.2d 20 (Tex.1974); *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923); *Wilkerson v. Wilkerson*, 515 S.W.2d 52 (Tex.Civ.App.—Tyler, 1974, no writ); *Roye v. Roye*, 404 S.W.2d 92 (Tex.Civ.App. —Tyler, 1966, no writ).

■ In exercising its discretion the trial court may consider all the circumstances surrounding the parties including the relative fault of the parties and "the benefits which the spouse not at fault would have derived from a continuance of the marriage," *Hedtke v. Hedtke,* supra, and the trial court is not required to divide the property equally between the parties and may consider the disparity of the earning power of the parties as well as their business opportunities, capacities and abilities. In Re Marriage of McCurdy, 489 S.W.2d 712 (Tex.Civ.App.—Amarillo, 1973, writ dism.).

■ We are unable to agree that the trial court abused its discretion in the division of the property. Appellant's third point is overruled.

■ In his fourth point appellant says the trial court abused its discretion by awarding attorneys' fee to appellee's coun-

sel in the amount of $6,000 because the evidence showed that appellee had the financial means to pay her own attorney. The discretion which the trial court may exercise in dividing the property in a divorce case also applies to the payment of attorneys' fees, and "the attorney's fee is but a factor to be considered by the court in making an equitable division of the estate * * *." *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002 (1951). Appellant's fourth point is overruled.

The judgment of the trial court wherein it awards attorneys' fees to the intervenors is reversed and such petition in intervention abated; in all other respects the judgment is affirmed.