James O. SMITH, Appellant,

v.

Linda M. SMITH, Appellee.

No. 20426.

Court of Civil Appeals of Texas, Dallas.

Feb. 20, 1981.

On Motion for Rehearing April 16, 1981.

Bryan D. Hamric, Kraus, Semon & Assoc., Dallas, for appellant.

Mary D. McKnight, McKnight & Fouts, Dallas, for appellee.

Before GUITTARD, C. J., and ROBERTSON and CARVER, JJ.

GUITTARD, Chief Justice.

James O. Smith complains of the property division in the divorce decree between him and Linda M. Smith. The principal dispute concerns a one-half interest in 550 acres of unimproved rural real estate, formerly owned by Linda's mother, which the trial court awarded to Linda. James contends that the property is community and should be divided equally. We agree that the property is community, but we hold that under the circumstances, the court had discretion to award it to Linda. Also, we find no reversible error in the admission of evidence or in the award of an attorney's fee to Linda. Consequently, we affirm.

The property in question, which the parties refer to as a "ranch," was originally owned by Linda's grandfather, and later passed to her mother, Margaret Henderson. In 1973, Mrs. Henderson was hospitalized with a heart condition. On July 20 of that year, she executed two deeds. The first conveys to her two daughters, Linda Smith and Madeline Westbrook, an undivided five percent interest in the ranch property for a recited consideration of "ten dollars and

other consideration paid." Linda's interest under this deed is conceded to be her separate property. The second deed conveys to James and Linda and to Madeline Westbrook and her husband an undivided ninety-five percent interest in the same property. It recites a consideration of ten dollars paid and other valuable consideration in consideration of the execution and delivery by the grantees of a promissory note for $181,378.75, with interest at five percent per annum, with monthly payments of principal and interest in the amount of $973.67. This deed reserves a vendor's lien. The grantees also signed a deed of trust to secure the note recited in the deed.

Linda testified that she and her sister made payments of interest in the amount of approximately $700 per month until 1976, and that Mrs. Henderson had "gifted back" the principal payments due in 1974, 1975 and 1976. Apparently, this incongruous expression was intended to mean that Mrs. Henderson forgave these payments. Linda testified that Mrs. Henderson also made a gift of $30,000 in 1976. Although Linda said that all of these gifts had been credited on the note, they are not supported by any documentary evidence. Linda further testified that in 1976, when her mother was divorced, the note was reamortized to provide monthly payments of both principal and interest aggregating $700, the same amount that the interest payments alone had been previously. After this arrangement, Linda made her share of payments of both principal and interest at the rate of $350 per month. These payments, she said, were made out of her personal bank account in which her separate royalty checks had been deposited, and the royalties were enough to cover the payments to her mother. She admitted, however, that this account also contained commissions she had earned during the marriage as a real estate broker. No attempt was made to trace each check written on this bank account to a deposit of her separate royalty funds.

Linda also testified, over objection, that the conveyances in 1973 were made because of her mother's poor health and were put in

the names of the four grantees rather than in the names of Linda and her sister, "so that the gift back could be made $3,000 per year per person and Mother could gift back twelve thousand a year rather than, say, just six thousand to the two of us." The "gifts back" ceased in 1976, when the $30,000 gift was made.

The trial court made the following findings of fact, none of which are attacked on this appeal as without support in the evidence:

7. That Petitioner's grandfather, WILLIAM MOSES, was a man of substantial means;

8. That prior to his death, WILLIAM MOSES transferred a tract of real property known as the Old William Moses Ranch to Petitioner's mother MAXINE HENDERSON;

9. That in 1973, MAXINE HENDERSON suffered a heart attack and her family did not expect her to recover;

10. That during the mother's illness, the Old Wiliam Moses Ranch was transferred to LINDA MARGARET SMITH, MADELINE WESTBROOK, and their husbands;

11. That no loans were taken out by JAMES OTIS SMITH and LINDA MARGARET SMITH in connection with the transfer, no down payments made, and no principal amount paid on the note for a period of three years;

12. That the intention of all parties to the transfer was that MAXINE HENDERSON was to "gift back" and forgive the entire principal amount of the note;

13. That by placing all four names on the deed and on the note, MAXINE HENDERSON was able to make tax free "gifts" each year on the note in the amount of $12,000.00, rather than only $6,000.00;

14. That gifts back were made by MAXINE HENDERSON in the amount of $12,000.00 in 1974; $12,000.00 in 1975; and $42,000.00 in 1976, using both the $12,000.00 exemption and the $30,000.00 lifetime exemption at that time;

15. That as of 1976, no payments had been made on the principal of the note;

16. That in 1976, MAXINE HENDERSON was divorced, her financial situation changed, and the note reamortized;

17. That subsequent to 1976, $350.00 in monthly payments were made monthly by LINDA MARGARET SMITH to her mother, MAXINE HENDERSON, on the ranch;

18. That at the time the original note was signed, JAMES OTIS SMITH earned approximately $20,000.00 per year;

19. That payments to MAXINE HENDERSON were to be made from funds received from LINDA MARGARET SMITH'S separate oil royalties;

20. That LINDA MARGARET SMITH maintained a bank account in her own name into which she deposited the oil royalties along with her earnings which were community;

21. That the oil royalties were the extra money in the SMITH family budget from which payments to MAXINE HENDERSON were consistently made;

22. That at no time since the signing of the original note had JAMES OTIS SMITH been responsible for making a payment on the ranch;

23. That JAMES OTIS SMITH had an antagonistic relationship with MAXINE HENDERSON and was not a logical object of her bounty;

24. That no improvements have been made on the ranch by the parties;

25. That JAMES OTIS SMITH is presently employed in North Dakota earning slightly in excess of $30,000.00 annually;

26. That LINDA MARGARET SMITH is not employed and is presently in

her second year at Perkins School of Theology.

Based on these findings, the judge concluded that James took an undivided one-fourth interest in the ranch as constructive trustee for Linda and that the transfer was not a sale but a testamentary transfer in anticipation of death.

In support of the trial court's order awarding the ranch to her and otherwise dividing the community equally (except allowing an attorney's fee, which will be discussed later), Linda contends that the ranch was her separate property because it was, in effect, given to her and her sister in 1973, and the "gifts back," were the method by which the gift was accomplished to avoid scrutiny by the Internal Revenue Service.

■ We cannot agree. Linda's own testimony negates any gift of the entire ranch in 1973. Later, her mother may have given her and her sister a total of $66,000 to be applied on the note, but these gifts were entirely voluntary and could have been discontinued at any time, as they were in 1976, leaving the grantees obligated for the balance of the note. Linda's payments of both principal and interest in the amount of $350 per month after 1976 further indicate her recognition of a continuing obligation. We conclude that both the 1973 deed covering a 95% interest in the property and the deed of trust of the same interest are evidence of a sale rather than a gift and that nothing in Linda's testimony, even if fully believed and accepted, would rebut the presumption of a sale arising from the provisions of these documents. Consequently, we conclude that the interest conveyed to James and Linda by the 1973 deed became at that time community property and remained community property at the time of trial.

■ We are not persuaded, however, that the court erred in awarding the property to Linda. Under section 3.63 of the Texas Family Code (Vernon 1975), the court was required to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party." Under this statute, the trial court is not required to make an equal division of community assets, but has a wide discretion which will be disturbed only when abuse of discretion is shown. *Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex.1975); *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974). In exercising its discretion, the court may consider all the circumstances of the parties. *Merrell v. Merrell*, 527 S.W.2d 250, 255 (Tex.Civ.App. —Tyler 1975, writ ref'd n. r. e.). Among the factors which may be considered are differences in earning capacity and business opportunities, probable future need for support, and the benefits an innocent spouse would have received from continuation of the marriage. *Bokhoven v. Bokhoven*, 559 S.W.2d 142, 144 (Tex.Civ.App.—Tyler 1977, no writ); *Cooper v. Cooper*, 513 S.W.2d 229, 233 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). Recently, the supreme court has held that the court may also consider the fault of a party in breaking up the marriage and an obligation assumed by one of the spouses to support a physically handicapped adult child. *Young v. Young*, 609 S.W.2d 758 (Tex.1980).

■ In view of the wide discretion recognized by the above authorities, we conclude that the trial court could properly consider, among other factors, the long association of the property in question with Linda's family, the circumstances of its transfer, the consistent use of Linda's separate funds, though not precisely traced, to make payments on it, and the fact that none of the payments were made from James's earnings or the income from his separate property. Also, the "gifts back" aggregating $66,000, and presumably credited on the note, though perhaps technically gifts to all four grantees, were presumably prompted by Mrs. Henderson's relationship to her daughters rather than to her sons-in-law, since James testified that his relationship with his mother-in-law was less than cordial and the court found that he was "not a logical object of her bounty." In this connection it is noted that James does not claim any separate property interest resulting from these gifts. These circumstances, in our view, established a reasonable basis

for making an unequal division of the community assets in Linda's favor. Consequently, no abuse of discretion is shown.

■ Accordingly, no reversible error is presented by James's complaint of the court's finding that the ranch was Linda's separate property. The court made no such explicit finding, although the conclusion that the 1973 transaction was testamentary in nature and that James took an undivided one-fourth interest as constructive trustee may indicate that the judge regarded this interest as her separate property. An error in characterizing property as separate or community is not necessarily reversible unless the division is, for that reason, manifestly unfair and, consequently, an abuse of discretion under section 3.63. See Bell v. Bell, 513 S.W.2d 20, 22 (Tex.1974); Crowell v. Crowell, 578 S.W.2d 562, 564–65 (Tex.Civ. App.—Fort Worth 1979, no writ); Muns v. Muns, 567 S.W.2d 563, 567–68 (Tex.Civ.App. —Dallas 1978, no writ). We have here no problem of the invasion of the separate property of one of the spouses for the benefit of the other, such as that posed in some of the cases cited and also in Eggemeyer v. Eggemeyer, 554 S.W.2d 137 (Tex.1977). The only question here is whether the division of the community estate is so unfair as to constitute an abuse of discretion. In view of the circumstances of this case, it is unlikely that the judge would have made a different division if he had characterized the property as community. Certainly, for reasons already stated, we cannot say that the division is so unfair as to constitute an abuse of discretion. Consequently, no reversible error is shown as a result of the judge's conclusions.

■ James also complains of the court's admission of Linda's testimony concerning the parties' intentions at the time of the 1973 transaction as an attempt to vary by extrinsic evidence their intentions as expressed in the deed and other documents. No reversible error is shown in this respect because even if Linda's conclusion concerning the intentions of other parties was not competent to establish that the transaction was a gift rather than a sale, other facts shown, as above pointed out, support the division as made by the court. In a trial without a jury, the admission of incompetent evidence will not require reversal when there is other competent evidence to support the judgment. Merrell v. Merrell, 527 S.W.2d 250, 254 (Tex.Civ.App. —Tyler 1975, writ ref'd n. r. e.).

■ We find no error in the court's admission over James's objection of his testimony on cross-examination that at a meeting between the parties and their attorneys after the controversy arose, he made a statement to the effect that the ranch was Linda's and he had no interest in it. James contends that this statement was inadmissible because made in the course of settlement negotiations. We know of no rule of law excluding the statement on that ground. We recognize that an offer of compromise of a pending controversy is not admissible. Sawyer v. Willis, 310 S.W.2d 398 (Tex.Civ.App.—San Antonio 1958, no writ) (holding that a statement of the amount claimed is admissible). But a statement of fact is not incompetent because made in connection with an offer of compromise. Leija v. American Automobile Ins. Co., 242 S.W.2d 814 (Tex.Civ.App.—San Antonio 1951, writ dism'd). See also Farmers' State Bank & Trust Co. v. Gorman Home Refinery, 3 S.W.2d 65, 67 (Tex. Comm.App.1928, judgmt. adopted); Shaw v. Massachusetts Bonding & Insurance Co., 373 S.W.2d 553, 557 (Tex.Civ.App.—Dallas 1963, no writ). The statement in question was not that James offered to let Linda have the ranch, but rather that he had no interest in it. This evidence tends to support the court's award of the property to Linda. Consequently, there was no error in admitting the statement.

■ James complains of the award of an attorney's fee to Linda out of community funds because she had a substantial separate estate, a substantial earning capacity, and adequate provision for her future necessities. He relies on Carle v. Carle, 149 Tex. 469, 234 S.W.2d 1002 (1950), in which the supreme court held that the attorney's fee is but one of the factors to be

considered in making an equitable division of the estate, considering the needs of the parties and the surrounding circumstances. Under this rule, the court has discretion to award an attorney's fee to the wife, even though she may have funds sufficient to pay it, so long as the division of the estate as a whole is not so manifestly unfair as to constitute abuse of discretion. *Walsh v. Walsh*, 562 S.W.2d 501, 503 (Tex.Civ.App.— San Antonio 1978, no writ); *Merrell v. Merrell*, 527 S.W.2d 250, 255–56 (Tex.Civ.App.— Tyler 1975, writ ref'd n. r. e.). In determining whether such a fee should be awarded, the financial standing of the parties and their disparate earning capacities may be considered. *Mills v. Mills*, 559 S.W.2d 687, 689 (Tex.Civ.App.—Fort Worth 1977, no writ); *Zaruba v. Zaruba*, 498 S.W.2d 695, 700–01 (Tex.Civ.App.—Corpus Christi 1973, writ dism'd). In view of the circumstances shown in this case, including the court's findings that James earns more than $30,-000 annually and Linda is an unemployed student, we cannot say that the judge abused his discretion in awarding an attorney's fee to Linda out of community funds.

Finally, James contends that the court erred in failing to make additional findings and conclusions in response to his request, but he does not demonstrate that he has been prejudiced in presenting this appeal. Consequently, no reversible error is shown in this respect.

Affirmed.

## ON MOTION FOR REHEARING

In his motion for rehearing James complains that this court cannot properly sustain the trial court's award of the ranch to Linda as an exercise of the trial court's discretion in making an unequal division of the community estate because the trial court did not exercise its discretion to divide all the community property, including the ranch, in view of its mischaracterization of the ranch as her separate property. He insists that this court cannot substitute its discretion for that of the trial court. We have found no decision passing on the question of whether a divorce decree making an unequal division that would be within the trial court's discretion under section 3.63 must be reversed because the trial court mischaracterized community property as separate. This question does not involve an invasion of separate property, such as that condemned in *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137 (Tex.1977). The problem is one of appellate procedure, that is, of determining whether an appellant who properly complains of mischaracterization of community property as separate must show that the trial court would probably have made a different division if the property had been properly characterized, or whether it is enough to show that there was a substantial error in the characterization which may have affected the division.

■ We conclude that the appellant has the burden to show the trial court probably would have made a different division if the property had been properly characterized. A contrary holding would, in effect, apply a presumption of harm from the trial court's mischaracterization. No such presumption is proper under rule 434 of the Texas Rules of Civil Procedure, which provides:

[N]o judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

■ Under this rule it is settled that there is no presumption of prejudice from erroneous rulings of the trial court. *Walker v. Texas Employers Ins. Ass'n*, 155 Tex. 617, 291 S.W.2d 298, 301 (1956). An appellate court is not authorized to reverse merely because the record discloses some error that is reasonably calculated to cause a miscarriage of justice; the appealing party has the burden to go further and show that it probably did cause the rendition of an improper judgment. *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex.1962). The appellate

court has the responsibility to determine from the record as a whole whether the appellant has been harmed from the error of the trial court. *Dennis v. Hulse, supra; State v. Parrish*, 159 Tex. 306, 320 S.W.2d 330, 332–33 (1958); *Texas Power & Light Co. v. Hering*, 148 Tex. 350, 224 S.W.2d 191, 192 (1949). These principles have been applied to errors concerning division of property in divorce cases. *Cravens v. Cravens*, 533 S.W.2d 372, 375 (Tex.Civ.App.—El Paso 1975, no writ); *Gaulding v. Gaulding*, 503 S.W.2d 617, 618 (Tex.Civ.App.—Eastland 1973, no writ); *Patterson v. Patterson*, 419 S.W.2d 699, 701 (Tex.Civ.App.—Beaumont 1967, writ dism'd).

 In the light of these authorities we are unable to say that an improper judgment resulted from the trial court's conclusions that James took title to an undivided one-fourth of the ranch as constructive trustee for Linda, that the 1973 deed was not a sale but a testamentary transfer in anticipation of the mother's death, and that the ranch was, therefore, Linda's separate property. Erroneous legal conclusions are not grounds for reversal when the court's fact findings are supported by the evidence and are sufficient to support the judgment. *Wirth, Ltd. v. Panhandle Pipe & Steel, Inc.*, 580 S.W.2d 58, 62 (Tex.Civ.App.—Tyler 1979, no writ); *Mercedes Dusting Service, Inc. v. Evans*, 353 S.W.2d 894, 896 (Tex.Civ. App.—San Antonio 1962, no writ). Here, the trial court's findings concerning the circumstances of the 1973 deed, the manner in which payments were made on the note, and the earning capacity of the parties are supported by the evidence and are clearly sufficient to support a judgment awarding the ranch to Linda as if it were her separate property and dividing the remaining community property as it did. Consequently, we hold that James has failed to discharge his burden to show from the record as a whole that the court's erroneous legal conclusions were reasonably calculated to cause and probably did cause the rendition of an improper judgment.

By so holding we are not substituting our discretion for that of the trial court, as condemned in *McKnight v. McKnight*, 543 S.W.2d 863 (Tex.1976). In that case the supreme court considered another provision of rule 434 which authorizes the appellate court to "render such judgment or decree as the court below should have rendered." The court held that this authority did not extend to rendition of a judgment on appeal making a different division from that made by the trial court because the division was a matter for the discretion of the trial court rather than the appellate court.

In this case, by contrast, we have not reversed the judgment of the trial court and rendered a different judgment. Instead, we have affirmed the judgment on the ground that although the trial court may have been technically in error in characterizing the ranch as Linda's separate property, the peculiar circumstances of this case, as found by the trial court, would have justified an award of the ranch to Linda as if it were her separate property and, therefore, to that extent, in making an unequal division of what was, in fact, community property. In view of the trial court's fact findings, we have no reason to suppose that the trial court would have made a different division if the ranch had been characterized as community. Thus, in affirming the judgment, we are upholding the trial court's exercise of discretion on the basis of the whole record. This lawsuit has been bitterly contested. The interests of neither party would be served by the delay and expense of a remand for further proceedings, and possibly another appeal, when the probability of a different result has not been shown.

In his motion for rehearing James also points out that there is no evidence in the record justifying the trial court's award of $1,500 to Linda as an attorney's fee in the event of a writ of error to the supreme court. In this respect James is correct. Linda is directed, therefore, to file a remittitur of that amount of the fee, whether or not it would ever become payable under the terms of the judgment.

The motion for rehearing is granted to the limited extent indicated and otherwise

overruled. Accordingly, the judgment of the trial court is affirmed on condition of remittitur of the $1,500 attorney's fee allowed for proceedings in the supreme court. If such a remittitur is filed before the time for issuance of the mandate in this cause, the judgment will be affirmed. If no remittitur is filed, the cause will be remanded for further consideration of the property division, and the judgment in other respects will be undisturbed.