**Joellen FINN, Appellant,**

v.

**Frank FINN, Appellee.**

**No. 21066.**

Court of Appeals of Texas,
Dallas.

Sept. 6, 1983.

Rehearing Denied Oct. 25, 1983.

Douglas F. Daman, Berman, Fichtner & Mitchell, Dallas, for appellant.

Walter H. Magee, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellee.

VANCE, Justice.

The questions presented in this appeal concern the trial court's division of property upon the divorce of Frank and Joellen Finn. The wife asserts fourteen points contending that various errors committed by the trial court resulted in an unfair and unjust property division. For the reasons stated below, we hold that the wife was improperly denied discovery of documents essential to prove the value of the community interest in the husband's law practice. We therefore reverse and remand the property division for a new trial.

The Finns were married for more than twenty years. During the entire time the couple was married the husband worked for a large Dallas law firm. The law practice is structured as a partnership in which the husband has been a senior partner for over ten years. Although the wife also has a law degree, she did not practice law during the marriage, but instead devoted her time to maintaining the home and raising their four children. The parties agreed on the value of most of the community property, but the value of the husband's law practice was hotly contested.

1. *Goodwill of Law Firm.*

The wife contends that the trial court erred by instructing the jury to exclude the goodwill of the law firm and its future earning capacity from the valuation of the

community interest in the husband's law practice. Relying on the Fort Worth Court of Civil Appeals decision in *Geesbreght v. Geesbreght,* 570 S.W.2d 427 (Tex.Civ.App.— Fort Worth 1978, writ dism'd), the wife argues that the husband's law firm has goodwill which is separate and apart from the husband's professional ability. Therefore, the wife argues that the husband's professional partnership is analogous to the professional corporation addressed by the court in *Geesbreght* and the goodwill attached to the law firm is property subject to division upon divorce.

The husband, relying on the supreme court opinion in *Nail v. Nail,* 486 S.W.2d 761 (Tex.1972) contends that the goodwill is not a vested property right which fixes a benefit in any sum at a future time. In support of his contention, the husband notes that the partnership agreement under which the law firm operates makes no provision for compensating a senior partner for the goodwill of the firm in the event of his death or withdrawal. The husband argues that the goodwill of the professional partnership is analogous to the individual professional practice addressed by the court in *Nail,* in that under the terms of the operating agreement any benefit conferred on the husband due to the goodwill of the firm is a mere expectancy contingent on his continued participation in the firm. Thus, he argues, the goodwill is not property in the community estate subject to division on divorce.

In *Nail* the supreme court noted that "goodwill has no existence as property in and of itself, as a separate and distinct entity, but only as an incident of a continuing business having locality or name." *Nail,* 486 S.W.2d at 763. The court went on to state that professional goodwill attaches to the person of the professional as a result of confidence in his skill and ability. In the case of a solo practitioner the court held that goodwill did not possess value or constitute an asset separate and apart from the professional's ability. *Nail,* 486 S.W.2d at 764. Accordingly, the court held that the goodwill of the professional's practice that may have accrued during the marriage was not property in the community estate. The *Nail* court was particularly concerned with the fact that should a solo practitioner die or cease to practice the goodwill would cease to exist without its value having been realized in any manner other than by enhancing the practitioner's earning capacity. *Nail,* 486 S.W.2d at 764. The *Nail* court specifically reserved the question of goodwill that exists apart from the person of an individual member in a professional partnership or corporation.

In *Geesbreght* the Fort Worth Court of Civil Appeals considered the question of whether goodwill was property subject to division upon divorce in the context of a professional corporation. Dr. Geesbreght and his partner incorporated their professional practice with each partner holding one-half of the corporate stock. The corporation did not do business under the names of the two stockholders and employed many professionals, in addition to the two stockholders, to provide services on behalf of the corporation under its many contracts. The court noted that the corporation had a reputation for providing services in its own name that was built in large part upon the abilities of the professional employees. To that extent, goodwill existed in the corporation separate and apart from the personal ability and reputation of Dr. Geesbreght. *Geesbreght,* 570 S.W.2d at 435. The court went on to hold that this corporate goodwill had a commercial value and to the extent that it enhanced the value of Dr. Geesbreght's stock in the corporation, the goodwill was property subject to division upon divorce. *Geesbreght,* 570 S.W.2d at 436. The issue of whether the community estate was entitled to share in the goodwill of the corporation was not before the *Geesbreght* court. It was undisputed that Dr. Geesbreght's stock in his professional corporation was community property and to the extent that the goodwill enhanced the value of the stock, it was community property subject to division upon divorce.

Read together, *Nail* and *Geesbreght* indicate a two-pronged test to determine

whether the goodwill attached to a professional practice is subject to division upon divorce. First, goodwill must be determined to exist independently of the personal ability of the professional spouse. Second, if such goodwill is found to exist, then it must be determined whether that goodwill has a commercial value in which the community estate is entitled to share.

■ Evidence in the present case indicates that the husband's law firm has goodwill independent of his professional ability. Like the professional corporation in *Geesbreght,* the firm does not conduct business under the names of the senior partners, but rather operates under the names of two founding partners no longer practicing with the firm. The record reflects that at the time of trial the law firm consisted of twenty senior partners, twenty-two junior partners and forty-three associates. The husband has been practicing law with the firm for over twenty-five years; however, the firm has been providing legal services to the public for more than ninety years. A large part of the firm's reputation for providing services was built upon the professional abilities of the husband's predecessors in the firm as well as the abilities of his present partners and professional employees. Under these circumstances we recognize that the firm has goodwill independent and apart from the professional ability of the husband.

The inquiry does not stop here, as the wife contends, but must continue to determine whether his goodwill has commercial value to which the community estate is entitled. Without question the goodwill of a long established firm has commercial value. The question which confronts us is whether the community estate is entitled to share in the value of the law firm's goodwill.

■ The community estate is not entitled to a greater interest than that to which the husband is entitled in the firm's goodwill. The extent of the husband's interest is governed by the partnership agreement.[1] Under the terms of the partnership agreement, should the husband die or withdraw, he is entitled only to 1) the amount contained in his capital account, 2) any earned income which had not been distributed, and

---

1. The wife urges us to follow a line of California cases which have held the accrued good will of a professional practice to be community property subject to division upon divorce. *Slater v. Slater,* 100 Cal.App.3d 241, 160 Cal.Rptr. 686 (1980); *Webb v. Webb,* 94 Cal.App.3d 335, 156 Cal.Rptr. 334 (1979); *Foster v. Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974); *Lopez v. Lopez,* 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974); *Golden v. Golden,* 270 Cal.App.2d 401, 75 Cal.Rptr. 735 (1969); *Mueller v. Mueller,* 144 Cal.App.2d 245, 301 P.2d 90 (1956). She places particular emphasis upon the *Slater* case which held the wife was not bound by the provisions of the partnership agreement as to the extent of the husband's interest should he withdraw from the partnership to determine the present value of the husband's continued participation in the partnership. Following the rationale of the California courts, the wife urges us to disregard the provisions of the partnership agreement and find accrued goodwill to be community property subject to division. This we decline to do.

The California community property statute mandates an equal division of the community property upon divorce. Cal.Civ.Code § 4800(a) (Deering Supp.1983). This has been interpreted to mean a mathematically equal division in the ideal situation. *In re Juick,* 21 Cal.App.3d 421, 98 Cal.Rptr. 324, 329 (1971). The court in California is not at liberty to make an unequal division of the community property due to disparate earning capacity between the spouses, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages and size of separate estates. Thus the California court must consider the factor of accrued goodwill under the guise of community property if it is to be considered at all. Such is not the case in Texas. The Texas court is at liberty to make an unequal division of the community property which, when all factors are considered, is a just and right division. TEX.FAM.CODE ANN. § 3.63 (Vernon Supp.1982–1983); *Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981). Thus, in Texas we are not placed in the position of being compelled to consider the accrued goodwill of a professional partnership as community property or omit it from consideration entirely as are the California courts. Under Texas community property law, we find the accrued goodwill of a professional partnership to be more properly considered as a factor enhancing earning capacity of the professional spouse rather than as community property to be valued and divided for the reasons set forth in the text of this opinion.

3) his interest in the firm's reserve account less ten percent of his proportionate share in the accounts receivable for clients' disbursement.[2] By a vote of three fourths of the senior partners, the husband may be required to withdraw, and in that event he is entitled to the same compensation for his interest as provided for voluntary withdrawal should he continue to practice law elsewhere. Additional compensation is provided should the husband voluntarily withdraw from the firm and cease to practice law. The agreement does not provide any compensation for accrued goodwill to a partner who ceases to practice law with the firm, nor does it provide any mechanism to realize the value of the firm's goodwill.

■ The lack of any legal right of the husband to realize the value of the firm's goodwill is a decisive factor. It distinguishes the present case from *Geesbreght* wherein the corporate structure provided a mechanism which enabled Dr. Geesbreght to realize the value of accrued goodwill by enhancing the value of his stock. In the present case the only mechanism through which the husband may possibly realize the value of the accrued goodwill is through continuing to practice law as a member of the firm, a circumstance depending not only on his own individual capacity, but also on the uncontrolled discretion of his partners. Thus his position is no better than that of the physician in *Nail,* in which the supreme court found the value of accrued goodwill in an individual professional practice to be realized only through enhanced future earning capacity. Such realization in the future is no more than an expectancy entirely de-

pendent on the husband's continued participation in the firm, and, therefore, is not property in the community estate. *Nail,* 486 S.W.2d at 764. Consequently, we hold that the trial court properly instructed the jury not to consider the law firm's accrued goodwill or future earning capacity[3] when placing a value on the community interest in the husband's law practice.

■ By this holding we do not mean that the husband's earning capacity as a member of the firm has no relevance to the division of the community estate. Under section 3.63 of the Family Code disparity in earning capacity of the spouses is a factor which may be considered when making a just and right division of the community property. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981). Although goodwill cannot properly be considered in determining the value of the community's interest in the law firm, to the extent that the husband's earning capacity is enhanced by his continued participation in the law firm, the court may consider this factor when assessing any disparity in earning capacity of the spouses.

### 2. *Limitation of Discovery.*

■ The wife contends that the trial court improperly denied discovery of the law firm's balance sheets, profit and loss statements, and records reflecting salaries and disbursements to senior partners. The trial court granted discovery of the firm's partnership agreement and retirement plan and of the husband's Internal Revenue Service K–1 schedules, which provide annual summaries of his share of the firm's assets and earnings. These documents, the wife

---

**2.** The agreement also contains extensive provisions regarding retirement benefits which we find unnecessary to detail here.

**3.** Goodwill has been defined as "the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or preju-

dices." *Estate of Masquelette v. Commissioner of Internal Revenue,* 239 F.2d 322, 325 (5th Cir.1956) (quoting Story, Partnerships § 99). To the extent that the law firm's future earning capacity is attributable to goodwill, the propriety of its consideration in the valuation of the community estate's interest in the law firm is disposed of by our holding in regard to goodwill. To the extent that the law firm's future earning capacity is attributable to factors other than goodwill, it is not property in the community estate based on the same rationale applied to accrued goodwill.

contends, were insufficient to allow her to adequately prepare a valuation of the community interest in the firm. Specifically she complains that without the requested documents she is unable to determine the value of the firm's accrued goodwill and its earning capacity, which have a direct relation to the value of the community interest in the firm and to the disparity between the earning capacity of the spouses.

The husband contends that the wife was able to adequately determine the value of the community interest in the firm without the financial records withheld from her. He points out that the wife presented the testimony of two expert witnesses who were able to place a value on the community interest in the firm without the absent records. In addition the husband presented evidence of the value of the community interest in the firm through the managing partner, Harold Kleinman, who testified from notes he had made while examining the absent records. The husband argues that the wife was not harmed because sufficient evidence was presented on which to value the community interest in the firm. We do not agree.

The wife served the husband with a subpoena duces tecum requesting the disputed documents. He refused to comply with the request and the wife filed a motion to compel production of those documents not produced. At a hearing on the motion one of the wife's two expert witnesses, Lane McDaniel, testified that he needed the firm's yearly financial statements for the last five years plus any interim financial statements for the current year, the part-

nership agreement, any existing buy-sell agreement, and the husband's Internal Revenue Service K–1 schedules for the last five years in order to calculate the value of the husband's interest in the firm.[4] McDaniel's testimony was sufficient to demonstrate a need for the requested materials. The judge ordered that the partnership agreement and the husband's K–1 schedules be produced and denied the motion as to the firm's financial statements.

At trial one of the wife's expert witnesses, Jim Sampson, testified that the value of the husband's interest in the firm under the provisions of the partnership agreement was $161,000.[5] Sampson indicated he had calculated these values based on the formula provided in the partnership agreement using the figures contained in the couple's tax returns for the last five years and the firm's balance sheets for 1976, 1977 and eight months of 1978. Sampson did not indicate that he had access to any other financial records of the firm.

At trial, the wife's other expert, Lane McDaniel, testified that the value of the husband's interest in the tangible assets of the firm was $122,000. McDaniel indicated that he obtained this figure from Kleinman's prior testimony.

The managing partner of the firm, Harold Kleinman, testified as to the amount to which the husband would be entitled should he either leave the firm and continue to practice law or be forced to withdraw from the firm by a vote of the partners. He stated that the total due the husband under either of these circumstances was $122,342.00.[6] Kleinman's figure is almost $40,-

**4.** Although McDaniel stated during direct examination that he would like to have the K–1 schedules for all of the partners in the firm, he conceded on cross-examination that only the husband's K–1 schedule was necessary and that he did not need the K–1 schedules for the other partners. McDaniel was never asked on cross-examination to retract his previously stated need for the firm's financial statements nor did he do so voluntarily.

**5.** Sampson also testified that the average amount of the husband's income from the firm for the last five years was $172,000. The husband is entitled to this additional sum under

the partnership agreement only should he withdraw from the partnership voluntarily and cease to practice law.

**6.** Kleinman testified that the balance remaining in the husband's undistributed earnings account was $45,853.08 and that the balance in the husband's capital account was $69,937.36. He also testified that the 10% deduction to be subtracted from the husband's share of the firm's reserve account was $1,638.00. The deduction figure should be equal to 10% of the husband's percentage interest in the accounts receivable for clients' disbursements. This figure was to be subtracted from the husband's

000.00 less than Sampson's figure. Kleinman testified that the source of his figures was the firm's "regular accounting records," and particularly the firm's balance sheet as of December 31, 1980, a document to which the court denied the wife access. This testimony was admitted over the wife's timely objection pointing out to the court that she had been denied access to records which were the basis of Kleinman's testimony.

Under these circumstances we find the denial of discovery deprived the wife of access to material information needed to effectively cross-examine Kleinman and to allow her experts all the information they required to accurately calculate the value of the husband's interest in the firm. Had the documents been produced as requested, the wife would have had the information necessary to effectively challenge the accuracy of Kleinman's testimony. Further, the wife's experts were not required to rely on secondary data in determining and presenting to the court her estimate of the value of the community interest in the firm.

The denial of discovery was material not only because it denied the wife information needed to adequately present her case to the court, but also because it deprived the trial court of sufficient evidence on which to base a valuation of the community interest in the law firm. The jury found the value of the community interest in the firm to be zero. On the husband's motion, the court disregarded the jury's finding and substituted the value testified to by Kleinman as the value of the community interest in the firm.[7] The wife contends that there is no evidence of probative value to support the court's finding. We agree.

The husband's Internal Revenue Service K-1 schedules from 1975 through 1979 were admitted into evidence. From these forms it is possible to calculate the amount in the husband's capital account and the amount of his undistributed income for the years encompassed by the forms. However, the K-1 schedules do not reflect the amount to which the husband would be entitled from the firm's reserve account, the third item specified in the partnership agreement. The trial of this action commenced on December 8, 1980, and lasted for eight weeks. The K-1 schedules contained no information as to the amounts contained in the husband's various accounts with the firm at the time of divorce, approximately one year after the time represented in the most recent K-1 schedule admitted at trial. Nor do the figures contained in the K-1 schedules comport with the figures testified to by Kleinman which were substituted for the jury's finding by the court.

Kleinman's testimony consisted of figures obtained from the firm's current records which were not produced at any time. Of the $122,343 which Kleinman gave as the value of the husband's interest before deducting an earnings distribution of $45,-853.08, the major component was $69,937.36, which, according to Kleinman, represented the husband's interest in the capital account. This figure, Kleinman said, was not based on computation, but was taken from "a schedule as of December 31, 1980, which lists each partner of the firm and lists opposite his or her name their capital account." The wife objected to this evidence on the ground that it constituted a summary with respect to which no underlying details had been provided.

Counsel for the husband offered to bring the document to court and allow it to be examined in camera. The judge, however, asked the witness whether the document would be cumulative of his testimony, and the witness replied that it would. On further examination, Kleinman explained that

---

proportionate share of the firm's reserve account. There was no testimony as to the amounts contained in either the firm's reserve account or its accounts receivable for clients' disbursements.

7. From the language contained in the judgment it is apparent that the court deducted the amount of undistributed earnings the court had ordered disbursed to the husband to pay federal income taxes from the figure testified to by Kleinman, thus finding the value of the community interest in the firm to be $76,489.

the bulk of the husband's capital account represented what the husband had actually paid for the "hard assets," the furniture and fixtures of the firm, over the period of twelve or thirteen years that he had been a senior partner, and that the "capital account" was a cumulation of such items. The wife's counsel objected to this testimony as being a summary of information from the firm's books that had not previously been made available to him and that he did not want to and could not do an accounting of firm's books at that point in the trial.

From these proceedings it appears that the wife's objection was not to the husband's failure to bring into court the document containing the cumulative figure, but that testimony based on this document was not competent because the document itself represented a summary of other figures which had not been made available for her examination.

■ This objection was well taken. Even if the document of December 31, 1980, had been offered, it would not have been admissible over the objection made. It was not a record of the husband's contributions made at or near the time of each transaction as required by the business records statute, TEX.REV.CIV.STAT.ANN. art. 3737e (Vernon Supp.1982–1983). Neither were the underlying records authenticated in the manner required by the statute.

■ Kleinman's testimony, based on unproved and unproduced records, was not susceptible of an adequate cross-examination, and neither did the wife's attorneys have an opportunity to subject the firm's records to an audit of their own. Consequently, the evidence was inadmissible. *Dallas Railway & Terminal Co. v. Guthrie*, 146 Tex. 585, 210 S.W.2d 550, 552 (1948).

■ Counsel for the wife did not waive the objection by advising the court that he had no time to look at the records and that it would be impossible to go through them and do an accounting of the figures at that point in the trial. When records are voluminous, the party relying on them, merely by making them accessible at the time of trial, cannot shift the burden to the opposing party to examine them and determine any objection to admissibility of testimony based on them. *Sherwin-Williams Co. v. Perry Co.*, 424 S.W.2d 940, 946 (Tex.Civ.App.—Austin 1968, writ ref'd n.r. e.). Oral testimony based on entries contained in written records without producing the source of such information is hearsay. *Delhi Gas Pipeline Co. v. Heddin*, 508 S.W.2d 417, 420 (Tex.Civ.App.—Tyler 1974, no writ). The lack of production of the underlying records renders Kleinman's testimony double-hearsay since the records themselves are hearsay until properly admitted as business records under article 3737e, TEX.REV.CIV.STAT.ANN. (Vernon Supp.1982–1983). *Day & Zimmermann, Inc. v. Strickland*, 483 S.W.2d 541, 546 (Tex. Civ.App.—Texarkana 1972, writ ref'd n.r. e.). These records, like those in *Sherwin-Williams*, are hearsay, and any testimony based on them is "hearsay spawned in hearsay." *Sherwin v. Williams Co.*, 424 S.W.2d at 946. Consequently, Kleinman's testimony does not establish the trial court's valuation as a matter of law. *See Xonu Intercontinental Industries v. Stauffer Chemical Co.*, 587 S.W.2d 757, 760 (Tex.Civ.App.— Corpus Christi 1979, no writ).

■ This problem was not cured by the testimony of the wife's experts. McDaniel accepted Kleinman's figure of $122,000 as the value of the husband's interest in the tangible assets of the firm and indicated that the source of his information was Kleinman's testimony, which was hearsay. Testimony based on the hearsay statements of others is nothing more than hearsay upon hearsay. *See Day & Zimmermann, Inc.*, 483 S.W.2d at 546; *Muro v. Houston Fire and Casualty Insurance Co.*, 329 S.W.2d 326, 332 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). Further, McDaniel based his testimony of value on factors other than those specified in the partnership agreement. We do not know what McDaniel's testimony would have been if further information had been developed by discovery or by cross-examination

of Kleinman based on the underlying records.

The only other evidence as to the value of the husband's interest in the firm under the partnership agreement was the testimony of Sampson, the wife's other expert. Sampson's figure was more than 30% greater than Kleinman's figure, the one ultimately used by the trial court to determine the value of the community interest in the firm. However, Sampson did not have access to the then current financial statements of the firm, but was forced instead to estimate the amounts in the various relevant firm accounts using secondary sources of information. Sampson testified on the basis of the information available to him, which did not include the current information available to Kleinman, that the value of the husband's interest according to the formula in the partnership agreement was $161,000. In the light of this testimony, the trial court could not properly hold as a matter of law that the value (before deducting the earnings distribution of $45,853.04) was $122,342.

The wife was entitled to inspect those financial records of the firm necessary to calculate the husband's interest in the firm under the formula contained in the partnership agreement. The fact that one of her experts was able to estimate that amount from secondary sources of information does not negate her right to the most accurate information available. We recognize the need to protect the confidentiality of the firm's records. However, this need not be an absolute bar to discovery because the court may order an *in camera* inspection of the documents to protect their privacy. *Maresca v. Marks,* 362 S.W.2d 299, 301 (Tex. 1962); *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 440 (1959).

We find that the denial of discovery was such a denial of the rights of the wife as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. The husband's interest in the firm was a major asset of the community estate. Lack of this discovery left the trial court's valuation of this asset without propert support in the evidence. Since this interest is the largest item of the community estate, and its value was the principal contested issue at the trial with respect to the division of the property of the parties, we conclude that without a proper valuation the trial court could not properly exercise its discretion in making a "just and right" division within section 3.63 of the Texas Family Code. Under these circumstances we hold that the trial court's division of the community estate was an abuse of discretion. Consequently, that portion of the judgment dividing the community property must be remanded for a new trial. TEX.R.CIV.P. 434.

With respect to the wife's pre-trial motion for discovery, we are unable to determine precisely which records should have been produced. Much of the information requested was for the purpose of determining the goodwill of the firm, a matter we hold should not be considered in determining the husband's interest. Neither is the wife entitled to examine the records of all the partners, but only those bearing on the husband's interest. Relevant information from the firm's balance sheet for 1980 and possibly for several previous years should be furnished. The court will have to determine, perhaps after hearing evidence, what additional records, if any, should be furnished in order to determine the husband's earning capacity and the value of his interest in the firm as determined by the partnership agreement. If relevant figures based on an independent audit are available, further examination of the firm's records may not be necessary.

If remand is necessary, we have been urged by amicus curiae to remand only on the issue of the value of the community interest in the law firm and not to remand the entire property division. This we cannot do. Article 3.63 of in Texas Family Code requires that the property division be just and right. The husband's interest in the firm constitutes a large percentage of the community estate and any change in its valuation may distort the division and re-

quire a redistribution of the property. The trial court must have before it all of the property of the parties in order to make the just and right division mandated by Article 3.63. Therefore, the entire property division is remanded for a new trial.

### 3. *Issues on Retrial*

The wife has raised several contentions with respect to problems that may recur on retrial. These include the propriety of including $126,400 in the property awarded to the wife comprised of gold coins which were not shown to exist; the propriety of awarding four life insurance policies to the husband contrary to a stipulation that they were to be awarded to the wife as her separate property; the propriety of charging the wife fees for guardians ad litem appointed over her objection; and the propriety of denying the wife an award for her attorney's fees. We have considered these contentions in light of our order remanding the property division for a new trial.

### a. *The Gold Coins*

With respect to the gold coins the wife contends that the property division was unjust because the trial court included the gold coins in the property awarded to her when there was no evidence that these coins were in the possession of either party at the time of trial. The wife admitted that she had removed the coins from the couple's safety deposit box and placed them in paper folders in their house. The wife asserts that the coins disappeared from the house while she was out of the state and accuses her husband of taking them while she was gone. The husband admits having searched the house while the wife was gone and having seen the paper folders, but insists that the folders were empty when he saw them. A special issue was submitted to the jury asking whether the husband or anyone acting in his behalf had removed the coins from the house. Based on the jury's negative response to this issue, the trial court credited the gold coins to the wife's share of the community property, impliedly finding that the coins or the proceeds from them were still in the wife's possession.[8] On remand, the court should ask the jury to determine whether each of the parties has possession of the coins or has received the benefit of having had them. If neither spouse is found to have benefited from possession of the coins, then they cannot properly be included in the property awarded to either spouse.

### b. *The Life Insurance*

The wife also contends that the trial court erred in awarding four life insurance policies covering the husband's life to him although the parties had agreed that the policies were to be awarded to her. The wife claims that the policies are her separate property and that in reliance on the written agreement she did not proceed at trial to present evidence as to the separate character of the property. The stipulation states that the wife "shall have as her separate property and estate" the insurance policies in question. The language used does not indicate that the present character of the property is "separate," but rather indicates an agreement by the parties that the policies are to be awarded to the wife as her separate property upon division of the community estate. We find this language to be more in the nature of a property settlement agreement and not a stipulation as to the character of the property. The trial court is not bound by the parties' written agreement which does not purport to settle the entire property division and is not incorporated in the judgment. *See Harding v. Harding,* 461 S.W.2d 235 (Tex.Civ.App.— San Antonio 1970, no writ). The court must follow the mandate of section 3.63 of the Family Code and make a just and right division of the property regardless of any agreement between the spouses. Before

---

8. The judgment awarded the wife, among other items as follows:

 B. Fifty (50) Mexican fifty Peso gold coins already in the possession and/or control of RESPONDENT JOELLEN FINN.

 C. One Hundred Seventy-Five (175) Austrian 100 Coronas already in the possession and/or control of RESPONDENT JOELLEN FINN.

such an agreement can become binding on the court, the court must find that the agreement is fair, just and equitable and has been entered into without coercion or other undue influence. *See Morgan v. Morgan,* 622 S.W.2d 447, 450 (Tex.App.—Beaumont 1981, no writ). However, on retrial the wife should have an opportunity to establish that the policies are her separate property, and, therefore, not property subject to division in the community estate. *Cameron v. Cameron,* 641 S.W.2d 210, 219 (Tex.1982).

### c. *The Guardians ad Litem*

The wife next contends that the trial court erred in appointing guardians ad litem for two of the couple's minor children at the husband's request, over her objection. She ·argues that the trial court abused its discretion in charging her with one-half of the guardians' fees because they had no ascertainable duties to perform, performed no discovery, and participated minimally in the trial. If the guardians were entitled to any fees for this minimal representation, the wife contends that the husband should have been charged with all of those fees because the guardians were appointed on his motion which the wife opposed. We do not agree.

 Under section 11.10(a) of the Texas Family Code the court may appoint a guardian ad litem to represent the interests of the child in a suit affecting the parent-child relationship. TEX.FAM.CODE ANN. § 11.10(a) (Vernon Supp.1982–1983). Such an appointment will not be overturned unless an abuse of discretion is shown. *Swearingen v. Swearingen,* 578 S.W.2d 829, 831 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ dism'd). Custody of the minor children was highly contested in the present case. Whether the guardians made any substantial contribution to the trial is a matter of hindsight which does not control the question of abuse of discretion. Trial of the custody issue took almost four weeks and accounts for fifteen volumes of the statement of facts. Under these circumstances, we find the trial court did not

abuse its discretion in appointing the guardians ad litem.

 The amount of compensation awarded to the guardians ad litem is also within the discretion of the court and will not be overturned unless a clear abuse of discretion is apparent from the records. *Poston v. Poston,* 572 S.W.2d 800, 802 (Tex. Civ.App.—Houston [1st Dist.] 1978, no writ). The record indicates that the guardians attended the four weeks of trial concerning the issue of custody as well as several pre-trial hearings. The court's award of fees to the guardians ad litem was supported by evidence in the record and was not an abuse of discretion.

 The parents of the minor child whose interests are being protected by the appointed guardian ad litem are required to pay the guardian's fee unless they are indigent. TEX.FAM.CODE ANN. § 11.10(e) (Vernon Supp.1982–1983). As the parents of the two minor children whose interests the court sought to protect by the appointment of guardians ad litem, both the husband and the wife were liable for their fees. The liabilities of the parties are one factor to be considered by the court when making a just and right division of the property under section 3.63 of the Texas Family Code. *Goren v. Goren,* 531 S.W.2d 897, 899 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd); *see Horlock v. Horlock,* 533 S.W.2d 52, 58 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ dism'd). This debt will be a factor to be considered by the court when dividing the property on remand.

### d. *The Wife's Attorney's Fees*

The wife also complains of the court's failure to award her any attorney's fees. Two special issues were submitted to the jury regarding the reasonableness and necessity of the services of her attorney and the amount to be awarded for those services. The jury found the services rendered by the wife's attorney were not reasonable and necessary and, therefore, did not reach the question of the amount to be awarded. Based on the jury's answers to those special

issues, the court did not award the wife any attorney's fees. The wife contends that the jury's answers to the two special issues on her attorney's fees were against the great weight and preponderance of the evidence and that the court erred in denying her attorney's fees.

■ The court is not required to award either spouse attorney's fees, but rather the attorneys' fees are one factor to be considered when making a just and right division of the property. *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950); *Austin v. Austin,* 619 S.W.2d 290, 292 (Tex. Civ.App.—Austin 1981, no writ); *Brooks v. Brooks,* 612 S.W.2d 233, 238 (Tex.Civ.App.— Waco 1981, no writ). On remand of the property division, the reasonable and necessary attorney's fees of both parties will be a factor considered by the court in making a just and right division of the property.

■ We note that over half of the statement of facts filed in this appeal concerns the issue of child custody, which the wife did not challenge. That portion of the statement of facts was used by the wife solely to challenge the need for the appointment of guardians ad litem for two of the minor children, an issue on which she did not prevail. We therefore tax one-half of the costs to the wife and one-half of the costs to the husband. TEX.R.CIV.P. 448.

The original opinion is withdrawn. The judgment is reversed with respect to the property division and affirmed in all other respects. The cause is remanded for a new trial limited solely to the issue of the property division.

GUITTARD, C.J., and ALLEN, SHUMPERT and SPARLING, JJ., join in this majority opinion.

GUILLOT, J., did not participate in this case.

STEWART, Justice, concurring.

I respectfully disagree with the majority's holding that the value of the law firm's goodwill is not to be considered in evaluating the community's partnership interest.

The firm's goodwill is an asset of the partnership entity, and it does not belong to either the separate or community estate of the individual partners. Bromberg, Source and Comment, TEX.REV.CIV.STAT.ANN. art. 6132b, § 28–A (Vernon 1970). Thus, the *Nail* decision is inapplicable here. The goodwill of the law partnership is analogous to the corporate goodwill addressed by the court in *Geesbreght v. Geesbreght,* 570 S.W.2d 427, 435 (Tex.Civ.App.—Fort Worth 1978, writ dism'd). The firm's good will enhances the value of the community partnership interest.

The partnership agreement does not control the value of the individual partnership interests. The asset being divided is the husband's interest in the partnership as a going business, not his contractual death benefits or withdrawal rights. *Slater v. Slater,* 100 Cal.App.3d 241, 160 Cal.Rptr. 686, 688–689 (1980). The formula in the partnership agreement may represent the present value of the husband's interest, but it should not preclude a consideration of other facts. *Slater,* 160 Cal.Rptr. at 689; *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975). The value of the husband's interest should be based on the present value of the partnership entity as a going business, which would include consideration of partnership goodwill, if any. Goodwill is property and, although intangible, it is an integral part of a business, the same as its physical assets. *Taormina v. Culicchia,* 355 S.W.2d 569, 573 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.); *Ordway-Saunders Co. v. Little,* 568 S.W.2d 711, 717 (Tex.Civ. App.—Amarillo 1978, writ ref'd n.r.e.). Whether the law firm possessed goodwill, and, if so, its value are fact questions for the trier of facts. *Taormina,* 355 S.W.2d at 574.

The majority are concerned with future contingencies. All assets of the community estate are valued as of the time of dissolution of the marriage. There is no valid reason to exclude a professional partnership interest from this basic rule when the part-

ner intends to continue as a member of the firm.

I otherwise concur.

AKIN, J., joins in this opinion.

AKIN, Justice, concurring.

Although I agree that the judgment should be reversed, I agree also with Justice Stewart that the goodwill of the husband's law partnership should be considered in arriving at the husband's interest in that partnership. Hence, I have joined in that opinion and concur in the result reached by the majority.

Apart from these grounds for reversal of the judgment, I would also reverse the judgment dividing between the parties the costs of two guardian ad litems, one for each of the parties' minor children. In this respect, in my view but one guardian ad litem was needed, if any, because the interests of the two children were not in conflict, but rather parallel. Indeed, throughout this long trial both guardian ad litems were present but did nothing except submit bills for trial time on an hourly basis. Thus, I fail to understand why two were necessary to protect the interests of these children. Consequently, I would hold that the appointment of a guardian ad litem for each child was an abuse of discretion. Since the husband moved the court to appoint each of these guardian ad litems, I would assess the costs of each against the husband.

In my view, courts are often too free with litigants' funds in appointing and in compensating unneeded guardian ad litems. Indeed, the guardian ad litem fees in this case were a significant sum with respect to the total community estate. Consequently, judges should appoint a guardian ad litem only where absolutely necessary to protect the childrens' interests and then to exercise restraint on the guardian ad litems as to whether the time expended was necessary to protect the wards. In this case, the judge permitted both guardian ad litems to sit throughout the entire trial, even though neither participated and even though much of the testimony and trial time concerned matters other than the childrens' interest. Nevertheless, each guardian ad litem was paid on an hourly basis as though each was actively engaged in a contested trial, which was not the case here.

Additionally, I fail to understand why the children's interests in this case were not represented under the doctrine of virtual representation by either their mother or by their father, each of whom was represented by competent counsel. *Oaklawn Preservation Society v. Board of Managers Dallas County Hospital Dist.,* 566 S.W.2d 315 (Tex. Civ.App.—Dallas 1978, writ ref'd n.r.e.). This doctrine is particularly applicable here since the record shows that each child's interests were fully represented by each parent's attorney. Accordingly, I would reverse also on this ground and assess all of the guardian ad litem fees to the husband who caused their appointment.

STEWART, J., joins in this opinion.

STEPHENS, Justice, dissenting.

I respectfully dissent to the majority's conclusion that the property division must be reversed for a new trial. I believe the decision results in an impermissible application of our standard of review in a divorce case.

On motion for rehearing, an application for en banc consideration was granted, eleven justices of this court participating. A majority of the court, as is evidenced by their opinion, concluded that the trial judge erred in denying the wife adequate discovery of the husband's partnership interest in the law firm of Thompson & Knight, and that such error mandates reversal of the property division award of the court. My review of the record and my analysis of the applicable law leads me to a different conclusion.

This case, bitterly contested, was tried to a jury for some eight weeks. At the trial's conclusion fifty-two special issues were submitted to the jury. After the verdict was returned, a fifty-four page judgment was entered granting the divorce, awarding cus-

tody of the four minor children to the father, charging no child support to the mother, and dividing the property of the parties.

The mother makes no complaint of the custody award, only of the property division. To place matters in their proper perspective, I first address our standard of review and responsibility, in light of the relief sought.

## STANDARD OF REVIEW

On January 1, 1970, Title I of the Texas Family Code became effective. It was intended to be a comprehensive guide with respect to all family matters which it encompassed. Article 3.63 of the Code directs the trial judge, in a divorce action, to order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. By its very language it is readily seen that the legislature intended to grant wide latitude to the trial judge when exercising his duty of dividing the estate. The court's discretion extends to division even to the extent of disregarding advisory answers of a jury. *Cockerham v. Cockerham,* 527 S.W.2d 162 (Tex.1975); *Merrell v. Merrell,* 527 S.W.2d 250 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.); *Roye v. Roye,* 531 S.W.2d 242 (Tex. Civ.App.—Tyler 1975, no writ); *Williams v. Williams,* 537 S.W.2d 107 (Tex.Civ.App.—Tyler 1976, no writ).

This court's role, once the trial judge has made his division, is only to determine if that division, under all of the facts, constitutes an abuse of discretion. We are not empowered, nor did the legislature intend for an appellate court to substitute its judgment for that of a trial judge.

Furthermore, we are confronted with a presumption that the trial court exercised its discretion properly, and a clear abuse of discretion must be demonstrated before we may reverse the trial court's decision. *Duke v. Duke,* 605 S.W.2d 408 (Tex.Civ. App.—El Paso 1980, writ dism'd); *Maben v. Maben,* 574 S.W.2d 229 (Tex.Civ.App.—Fort Worth 1978, no writ); *Wilkerson v. Wilker-son,* 515 S.W.2d 52 (Tex.Civ.App.—Tyler 1974, no writ).

Thus it is readily seen that errors committed during trial require reversal only when the error causes a manifestly unjust division of property. *Smith v. Smith,* 620 S.W.2d 619 (Tex.Civ.App.—Dallas 1981, no writ).

## PROPERTY DIVISION

The parties stipulated to the values of substantially all of the community assets. As to those values not stipulated, the jury found the value of a Keough retirement plan in Thompson & Knight to be $81,-244.27, and in response to a special issue found the husband's interest in the firm of Thompson & Knight to be zero. The trial judge cured the error, as to the husband's interest in Thompson & Knight, by entering the judgment NOV as to that jury issue, and substituting his own finding of $76,-489.00, which figure was supported in the evidence from the testimony of the managing partner of the firm. Additionally, four automobiles were divided between the parties, without values being assigned. Using these figures, I compute the net value of the parties' assets to be $869,065.73. The wife was awarded various properties valued at $416,290.60, representing 48% of the total estate, and the husband was awarded $452,-775.13, representing 52% of the total estate. This results in a larger award to the husband by the sum of $36,848.53.

Four special issues were submitted to the jury, in which they found that the husband had been damaged by certain acts of the wife in withdrawing community funds from bank accounts and by pledging assets to secure personal loans for her sole benefit, and without the consent or knowledge of the husband. The jury awarded one half of the damage found for those acts to the husband, in the sum of $39,761.00. When the division of property is adjusted by this sum, it results in the wife being awarded $416,290.60 by the court, plus the $39,761.00 previously received from the secret withdrawal of community funds, totaling the sum of $456,605.16, and the husband being

awarded $452,775.13, with the corresponding difference of $3,276.47 now favoring the wife. The percentages shift to 50.19% of the estate being awarded to the wife and 49.81% to the husband.

The parties' liabilities were assessed by charging all existing debts and mortgages on specific properties to the party receiving that property. Additionally the husband was charged with a $5,000.00 debt due to an individual. The unpaid federal income taxes, if any, for 1978 were charged to wife insofar as her separate earnings had generated the liability. The husband was charged with the payment of all taxes due from joint earnings for 1979 and 1980. For the year 1981, the parties were to file a joint return for the period of the year during which they were married, and a separate one for the period of time after the divorce. The tax liability was to be determined by certified public accountants. Additionally, the wife was ordered to reimburse the husband in the sum of $7,962.43, which he had been required to pay as capital gain taxes resulting in the forced sale by a creditor of assets pledged by the wife on a loan made for her benefit and without the husband's knowledge or consent.

Finally, the judgment awarded one life insurance policy to the husband and one to the wife. There were ten other policies, found to be owned by the wife, yet set aside to the husband as his separate property. The court's reasoning for this award was set forth in detail in the judgment which recites the bitterness and animosity of the parties, recognizes the discretion vested in him, and finds this award to be proper, having due regard for the rights of each party and the children. As a condition precedent to the vesting of ownership of the insurance policies in the husband, he was required to pay the wife the cash surrender value of each policy.

From these facts, I conclude that the property was fairly and evenly divided. However, two questions must be addressed before a final determination may be made.

First, was the denial of discovery of certain records of the law firm error, and if so

did it likely result in an unfair and unjust division, or perhaps more fairly stated, did the denial of discovery preclude the wife from presenting evidence of substantially more assets than were revealed, thus precluding the trial court from having before it the extent of the estate necessary to effect a just and fair division? Second, was the allocation of certain gold coins to the wife improper, in light of her contention that the husband had taken them?

### DENIAL OF DISCOVERY

The wife argues that the trial court denied her access to the financial books and records of the firm during pre-trial; that it precluded her from introducing evidence, during the trial phase, of Thompson & Knight's gross receipts and net revenues which directly related to the parties' interest in the firm; that it precluded her, during the trial phase, from introducing evidence of retirement benefits granted to senior partners; and further, that the trial court erred by permitting one of the senior partners of the firm to testify as to values contained in partnership records, from records not admitted in evidence or subject to pre-trial discovery.

Prior to trial the wife sought to take the deposition of the husband. She served him with a subpoena duces tecum commanding him to produce a comprehensive list of documents which encompassed all of the financial matters of the firm. The documents were not produced in compliance with the subpoena, which resulted in the wife filing a motion, under Rule 167, TEX.R.CIV.P., to compel their production.

On December 8, 1980, the trial court heard evidence on the wife's motion from Mr. Lane McDaniel, an attorney, called by the wife as her witness. Mr. McDaniel testified that he held a Ph.D. degree, and a B.B.A. degree in accounting. He stated that he was professionally trained in dividing closely held business interests. During the hearing the trial judge asked Mr. McDaniel what records he needed to adequately determine Finn's interest in the partnership. He replied that he needed the

partnership agreement, the forms 1065 for a five-year period, and the forms K–1 that are associated with the business. He defined a K–1 as the "partner's distributive shares of earnings and other information which goes along...." However, he agreed on cross-examination, that since the terms of the partnership agreement would be controlling in the sale of Finn's interest, he needed only the forms K–1 of Finn, and not of all the partners, to determine Finn's interest. Additionally, he agreed that if the partnership agreement denied Finn any interest in specific partnership assets, in the event of a sale of his partnership interest (which it did), that he could determine Finn's interest in the firm from his forms K–1, and that he would not need the firm's forms 1065. At the conclusion of this hearing, the court ordered production of the partnership agreement, Finn's K–1 forms, and the current retirement plan.

TEX.R.CIV.P.RULE 167 is designed to provide a party showing good cause the right of inspection of documents and evidence material to that party's cause of action or defense. The documents sought must contain material evidence. Furthermore, a showing of good cause is required. This rule was not designed, nor should it be permitted to be used, to further a fishing expedition. The burden is on the moving party to both allege and prove a good cause for the production of the documents requested. This, of course, requires allegation and proof of facts, and not mere conclusions. *Bryan v. General Electric Credit Corporation,* 553 S.W.2d 415 (Tex.Civ.App. —Houston [1st Dist.] 1977, no writ); *Lueg v. Tewell,* 572 S.W.2d 97 (Tex.Civ.App.— Corpus Christi 1978, no writ). Additionally, the trial judge is vested with the discretion of deciding whether to order production of documents requested, and his action will not be reversed on appeal, unless it be shown that he has abused that discretion. *City of Houston v. Autrey,* 351 S.W.2d 948 (Tex.Civ.App.—Waco 1961, writ ref'd n.r. e.).

My review of the motion reveals that no facts were pled; only conclusions as to the need for the requested documents. Furthermore, not only was the evidence presented on the motion insufficient to show that all documents requested were material to prove Finn's interest in the partnership, but also the converse was shown by the wife's own witness testifying that only certain documents were necessary for him to determine Finn's interest in the partnership. Those documents were ordered produced by the trial judge; i.e. the forms K–1 of Finn, the partnership agreement, and the retirement plan.

During the trial, both Mr. McDaniel, the same witness who testified on the wife's motion to compel, and Mr. Jimmy Simpson, testified for the wife as her expert witnesses. Neither stated that they had been denied access to documents necessary to make a determination of Finn's interest in the partnership. In fact, Mr. Simpson testified that he had been permitted to review two years and eight months of 1978, of Thompson & Knight's financial records, the Finns' personal financial statements for the last five years, and the partnership agreement, and that from this data he was able to calculate Finn's interest in Thompson & Knight.

In light of the evidence presented on the wife's motion to compel, the trial judge's ruling, and the evidence presented at trial, I conclude that the wife was not denied discovery of evidence material to her case, and that no abuse of discretion has been shown.

### HEARSAY TESTIMONY

The wife complains that the testimony of Harold Kleinman, the managing partner of Thompson & Knight, was inadmissible hearsay. She contends that his testimony constituted a summary of books and records of the firm, which were not in evidence, and thus such testimony was hearsay. I agree that his testimony was hearsay, but it met a well established exception to the hearsay rule, and thus was admissible evidence.

Mr. Kleinman was shown not only to be a senior partner in the firm, but was shown

to be the managing partner. He testified that the firm was composed of 20 senior partners, 22 junior partners, approximately 50 associate lawyers, and approximately 130 other salaried employees. He testified in detail as to the operations of the partnership, the detail of the accounting procedures, his role as custodian of the records, the fact that the records were on computers, and the fact that he had examined the records and brought to court his notes of their contents insofar as Finn's interest was concerned. After this preliminary qualification, he was asked to state the amount of Finn's capital account on December 31, 1980. The objection was voiced that such testimony would constitute a summary, and that such summary would not be admissible unless the underlying details were provided for examination. After considerable colloquy between the lawyers and the court, the evidence was admitted.

It has long been established that business records may be received into evidence as an exception to the hearsay rule. TEX.REV. CIV.STAT.ANN. art. 3737e. Computer printouts are recognized as business records. *See Rosenberg v. Collins*, 624 F.2d 659 (5th Cir.1980); *Voss v. Southwestern Bell Telephone Company*, 610 S.W.2d 537 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

The wife relies on *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80 (Tex.1976), for the proposition that Kleinman's testimony should not have been admitted because his testimony consisted of summaries of business records and thus constituted hearsay. The wife misplaces her reliance on *Black Lake*. *Black Lake* holds that when underlying records are admissible under art. 3737e, and when those records and their supporting data are shown to be voluminous to the extent that it would be impracticable to require the production of the entire mass to be perused by the jury or read aloud to them, the best evidence rule should be relaxed by allowing written summaries or testimony by a qualified witness summarily stating the results of an examination of the records, citing *Cooper Petroleum Co. v. LaGloria Oil & Gas Co.*,

436 S.W.2d 889, 891 (Tex.1969). The court further required, as a condition for admission of the summary evidence, that the underlying data be either brought into court or made available to the opposing party, in order that the correctness of the evidence may be tested by inspection or that the material may be available for cross-examination. *Lewis v. Southmore Savings Association*, 480 S.W.2d 180 (Tex.1972); *Dallas Railway & Terminal Co. v. Guthrie*, 146 Tex. 585, 210 S.W.2d 550 (1948); 4 Wigmore, Evidence Sec. 1230 at 535 (Chadbourn rev. 1972). Furthermore, Texas case law has recognized that trial courts have wide discretion in determining whether summaries are necessary to expedite the trial. *Texas Warehouse Co. of Dallas, Inc. v. Springs Mills, Inc.*, 511 S.W.2d 735 (Tex.Civ. App.—Waco 1974, writ ref'd n.r.e.); *Moore v. Moore*, 430 S.W.2d 247 (Tex.Civ.App.— Dallas 1968, writ ref'd n.r.e.); *Shelby County v. O'Banion*, 188 S.W.2d 195 (Tex.Civ. App.—Beaumont 1945, no writ). Finally the court holds that it is for the trial court to determine whether the opposing party has had an adequate opportunity to examine the records. It should here be noted that when Kleinman's testimony as to the value of Finn's capital account was solicited and the objection made, Thompson & Knight offered to make the records available to the wife for her examination. Her counsel refused, stating that he did not want to look at the records, and that he did not have time then to examine them. In my opinion this constituted a waiver of the wife's further right of examination, in the absence of seeking and being denied a continuance for that purpose.

The evidence shows that Kleinman was the managing partner of the firm with the responsibility for its operation; he was custodian of its records; the court was shown the impracticality of bringing the entire mass of underlying documents into court, constituted of thousands of entries over eleven years or more of purchases, sales depreciation schedules and other data that made up the capital account; the immateriality of the records as they relate to other partners and employees; that all entries

were made at or about the time of the transaction; and finally, the records were made available for the wife's counsel to examine. It seems to me that the test set out in *Black Lake* has been met.

From this evidence, and from the wife's counsel's refusal to inspect the documents when offered for inspection, I conclude that Kleinman's testimony was admissible as an exception to the hearsay rule.

## THE MISSING GOLD COINS

Our record reveals that the wife first filed suit for divorce September 22, 1978. Before that time, and in contemplation of filing for divorce, she removed all of the gold coins from a jointly controlled safe deposit box at one bank in Dallas, to another, in her name alone, without the knowledge of the husband. Later when the husband learned of this transfer, she moved them to a third bank and again established a safe deposit box in her name alone.

The first divorce suit, to which the husband had filed no cross-action, was scheduled for trial on July 14, 1980, before a visiting judge. On that morning the wife dismissed her suit. On that same morning, she and her sister drove to the bank where she emptied her safe deposit box of all gold coins, consisting of 275 Austrian four ducats, 55 gold Krugerrands, 50 Mexican peso gold coins, and 175 Austrian one hundred coronas. While at the bank, her sister rented a safe deposit box in her name, making the wife a co-signatory on the box. The wife testified that her sister rented the box because she had a book which she wished to keep in it, and denied that she transferred any of the gold coins into her sister's box. The wife also took possession of five buckets of silver coins, each containing $1,000.00 face value, which had pledged as collateral on a loan at that bank, made for her personal benefit, without the knowledge of the husband.

The wife and her sister left the bank, drove to her home on Harvest Hill, took the coins into the house, and the sister left. The wife agrees that the market value of the gold coins in her exclusive possession could have been in excess of $500,000.00 during this interval of time.

After her sister left the Harvest Hill address on the morning of July 14, 1980, the wife hid the gold and silver coins in various places in the house. She testified that she did not spend the night or the next three nights at that house, although she did stay there some of the time during those days. On July 18, 1980, the wife left Dallas and was gone for one month. During this time her whereabouts were unknown to the husband. When she returned to Dallas, she accused her husband of removing the 175 gold Austrian Coronas and 50 Mexican pesos, but made no accusation as to the other coins. She testified that upon her discovery of the missing coins she notified neither the police nor any insurance company of their disappearance. In answer to special issue, the jury found that neither the husband nor anyone acting in his behalf removed these coins from the Harvest Hill address.

On October 7, 1980, long after the wife returned to Dallas, she negotiated a loan from a Dallas Bank in the amount of $120,000.00, securing it with the remaining gold and silver coins, valued by the bank at $190,475.00.

This evidence shows that the wife, on July 14, 1980, was in possession of the gold coins in question. The jury absolved her husband from later taking them. It is highly unlikely that burglars removed only these specific coins, leaving all the remaining ones, as well as other valuables in the house, during the wife's absence. Under these facts, the trial judge was clearly justified in charging the wife, the last party in possession, with the gold coins. *See Arrington v. Arrington,* 613 S.W.2d 565 (Tex.Civ. App.—Fort Worth 1981, no writ); *Baxla v. Baxla,* 522 S.W.2d 736 (Tex.Civ.App.—Dallas 1975, no writ); *Grothe v. Grothe,* 590 S.W.2d 238 (Tex.Civ.App.—Austin 1979, no writ).

In summary, I must challenge the wisdom of the majority's reversal and remand this case for a new trial as to the property division. First, the law is clear that unless error in the trial results in a manifestly

unfair division of the property, the error is harmless. Second, the majority agree that no part of the good-will of Thompson & Knight is a divisible asset in this case, so good-will is not in issue. All of the other values having been stipulated by the parties, this leaves only the capital account of the husband in the firm of Thompson & Knight disputed. Perhaps a new trial as to property will produce a more precise proffer of evidence as to this computer print-out figure, yet the figure will unquestionably be the same. The result then will be not a more fair and just division of the parties' estate between the parties; instead, it will be a dissipation of the capital account, and perhaps more, to pay the additional lawyer fees, accounting fees, witness fees, and other expense of litigation, resulting, finally, in a lesser sum to be realized by the parties. This litigation has been long, tedious, expensive, and emotional for the parties and their children. It should be ended. The trial court's judgment should in all things be affirmed.

CARVER, STOREY, WHITHAM and ROWE, JJ., join in this dissenting opinion.